# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## APRIL TERM, 1880.

---

### GEORGE M. KLEIN *v.* GEORGE P. RECTOR.

1. SALE. *Rescission by seller. Fraudulent misrepresentations.*
   Misrepresentations by the buyer of goods as to his solvency, unless known by him to be untrue, and acted on by the seller under the belief of their truth engendered thereby, will not enable the latter to rescind a completed sale.

2. SAME. *Reclamation. Time and means.*
   If the buyer never had reasonable expectation of paying for the goods, the seller may reclaim them at any time before third persons' rights intervene, and by any means short of a breach of the peace.

3. SAME. *Representations of solvency. Subsequent failure.*
   Goods sold and delivered to a buyer, upon the statement of his son that he is solvent, cannot be reclaimed, although he soon afterwards fails and makes an assignment for the benefit of his creditors.

4. SAME. *Rescission by agreement. Re-delivery.*
   In order to revest the property in the seller, on rescission by mutual agreement, delivery and acceptance are as essential as in the original sale.

5. SAME. *Acceptance. Rights of third person.*
   Pointing out barrels said to contain liquor is not a sufficient delivery to complete the rescission of the contract as against the buyer's assignee, who obtains possession before the seller accepts them.

ERROR to the Circuit Court of Warren County.
Hon. UPTON M. YOUNG, Judge.
The defendant in error brought this action of trover for the conversion of three barrels of brandy and three of whiskey

against the plaintiff in error, who pleaded not guilty. On the trial, the plaintiff proved that Eric W. Wallin, a merchant of Vicksburg, applied to an agent of a foreign firm to fill an order for liquors, but they declined upon the ground that he was in failing circumstances; that, afterwards, his son, Ed. Wallin, came to the plaintiff, the fully empowered agent of Wood & Lea of St. Louis, Missouri, and asked him to fill the order, assuring him that his father was solvent; that he filled it, and the liquor, which was worth sixty dollars a barrel, was shipped to Eric W. Wallin, and received by him; that soon afterwards, hearing that Eric W. Wallin was about to make an assignment, the plaintiff went to his store, where he found both father and son, and told them that the debt was one of honor, and, as he had sold the liquor at Ed. Wallin's solicitation, they must protect him; that, after some consultation, they agreed to let him have the liquor, and called a clerk, who pointed out the barrels, and Ed. Wallin said, in his father's presence, "There they are — you can have them"; that the clerk shook the barrels, so that the plaintiff knew that there was some liquid in them, but it was not measured, and he did not know how much, or whether it was liquor; that the whiskey was the same which he had sold, but it was uncertain as to the brandy; that the plaintiff held an account against Eric W. Wallin, of which the liquor formed a part, and he intended to credit the bill thereon, but never did so, and nothing was said about it at the time; that, not knowing in what manner he was to receive the liquor, or how he was to have it marked, the plaintiff left, and went to see the United States Revenue officer to learn whether he could receive it in his own name or would have to take out a license, and the officer told him that the license of the house in St. Louis would cover the receipt of liquor here; that, after obtaining this information, the plaintiff returned to Wallin's store, where he found the defendant, Klein, in possession of all the goods in the store, holding by an assignment from Eric W. Wallin for the benefit of his creditors, and Klein refused to deliver the liquor, but afterwards sold it; that the plaintiff had no agreement with Wallin about holding the liquor for him while

he went to see the revenue officer, but supposed it would remain in his house until he came back. The demurrer of the defendant to the evidence was overruled by the court, and judgment was rendered for the plaintiff.

*Shelton & Crutcher*, for the plaintiff in error.

1. The defendant in error did not, in the exercise of a right springing from the fraud in obtaining the liquor, rescind the sale before the plaintiff in error obtained possession. The sale is not rendered void by the fraud, but is only voidable at the seller's election. Benjamin on Sales, §§ 433, 443. By attempting to recover the liquor, upon the ground that it was a debt of honor, and retaining the claim for the price which he proposed to credit when he received the liquor, he waived his right to rescind the sale, and confirmed it. The facts, however, are not such that the defendant in error could rescind the sale without the buyer's consent. It does not appear that the representations were false when made, or that they were made with the intention of obtaining the goods and not paying for them, or that they deceived the seller, and constituted the sole inducement to the sale, or that Ed. Wallin, who made them, was his father's authorized agent. Benjamin on Sales, §§ 429, 443 ; Wharton on Agency, 100. Subsequent ratification adopts only such of the agent's acts as the principal had knowledge of. Wharton on Agency, 65 ; *Lee v. West*, 47 Ga. 311. While the assignee, under the general assignment, takes subject to all equities, the defendant in error cannot now, after the liquor has been sold, assert, for the first time, a right to rescind. *Wickham v. Martin*, 13 Gratt. 427 ; Benjamin on Sales, § 433.

2. There was no resale or rescission by mutual agreement before the execution of the deed of assignment. The legal title and possession being both with Wallin, he could only re-vest the title in the defendant in error so as to defeat the assignee's claim, by such proceedings as would give a purchaser the right of immediate possession under the Statute of Frauds. When the defendant in error left the store to see the revenue officer, the re-sale was incomplete under Code 1871, § 2895. A delivery, or payment or security of the purchase-money was essential. The intention to credit Wallin for

the liquor on his account with the defendant in error is not enough to take the case out of the statute. Benjamin on Sales, § 193. There was no delivery and receipt of the goods, for they never passed from Wallin's control, and the defendant in error was not prepared to accept them. Benjamin on Sales, §§ 180, 187; *Daniel* v. *Frazer*, 40 Miss. 507. The assignee's right became perfect before the defendant in error acquired title.

3. ·The expression, used by the counsel for the defendant in error, that the demurrer admits everything which the evidence tends to prove, is inapplicable to a demurrer to evidence. The facts set out in the demurrer constitute what is admitted on both sides to be the facts in the case. When the plaintiff joins in the demurrer, he admits that those facts are all that the evidence establishes. They stand as the allegations of a plea which is demurred to. The demurrer admits only the allegations, and nothing more. *Ware* v. *McQuillan*, 54 Miss. 703.

*S. M. Shelton*, on the same side, argued orally.

*Pittman, Pittman & Smith*, for the defendant in error.

1. As this is a demurrer to the evidence, it is unnecessary that the facts should be proved expressly, if by fair inference they result from the evidence in the case. A demurrer to evidence admits all facts which the evidence may tend to prove. *Mobile Railroad Co.* v. *McArthur*, 43 Miss. 180; *Young* v. *Black*, 7 Cranch, 565. The object of a demurrer to evidence is to question the relevancy of the evidence on one side, and make that question the sole point on which the issue of fact is to be determined. Gould's Pleading, § 47. The party demurring admits every conclusion to which his adversary's evidence conduces. *Fowle* v. *Alexandria*, 11 Wheat. 320. It is rarely a safe proceeding, for it admits the truth of the evidence demurred to, and all just inferences which can be drawn therefrom. 4 Minor's Institutes, 749.

2. The evidence shows that the contract by which Wallin obtained possession of the liquor was induced by fraudulent representations as to his solvency, and as soon as Rector learned that they were untrue, and before the rights of any innocent person had intervened, he took prompt steps to

disaffirm the sale. The son, who was the father's agent to make the purchase, could scarcely have exceeded his authority in representing the proposed buyer as solvent. As a man is presumed to intend the natural and probable consequences of his own acts, Wallin, purchasing when insolvent, will be presumed to have intended never to pay for the goods. *Load v. Green,* 15 M. & W. 216; *Mulliken v. Miller,* 8 Cent. Law Journ. 429. The fact that Rector has never credited the account with the barrels of liquor is due to the further fact that he never recognized the debt. He promptly disaffirmed the contract of sale, and does not admit that Wallin owes anything for the liquor, or that he owes Wallin for returning it. It is impossible for him to give stronger evidence of considering the original sale null.

3. The evidence shows a rescission by mutual agreement, and delivery of the liquor in pursuance thereof. When Rector told the Wallins that they must protect him, they understood that to be a demand for the barrels, for, after consultation, one of them said, " There they are — you can have them." The contract and delivery were complete. Rector made an unconditional offer, and Wallin accepted the offer and carried out his acceptance. Benjamin on Sales, §§ 38, 39. There was such a delivery as the property, from its nature, was susceptible of. Benjamin on Sales, § 696. The barrels were ascertained, pointed out and specifically delivered. *Baldwin v. McKay,* 41 Miss. 358. The offer to receive came from Rector, and was accepted by Wallin; and nothing more was to be done to put the liquor at Rector's risk if destroyed. Evidently both parties intended to declare the sale rescinded, because of the peculiar circumstances under which it was made, and that the liquor delivered should then and there be in satisfaction of the debt contracted for it.

*M. F. Smith,* on the same side, made an oral argument.

CHALMERS, J., delivered the opinion of the court.

The plaintiff's right to recover was rested upon two grounds: 1st., that there had been such fraud practised upon him by the vendee in the sale of the goods as entitled him to rescind the contract and reclaim the goods at his election, and *in*

*invitum* as to the vendee ; 2d, that there was in fact an actual rescission and re-investiture of title in him, by mutual agreement between himself and the vendee, before the rights of the assignee of the latter intervened.

In order to give to the vendor of personal property the right of his own motion to declare the contract at an end, and reclaim the property, where the sale has been completed and delivery has taken place, there must be shown such fraud upon the part of the purchaser as will fall but little, if at all, short of supporting a prosecution for obtaining goods under false pretences. It is essential that the representations claimed to be fraudulent should have been untrue in point of fact, should have been known to be such by the party making them, and should have been acted upon by the seller under the belief thereby engendered that they were true.

It is sometimes said that the circumstances must be such as to warrant the belief that the purchaser never intended to pay for the goods, or could have had no reasonable expectation of so doing. Where such a state of facts exists, the seller may reclaim the property at any time before the rights of third persons have intervened, and by any means short of a breach of the peace. Benjamin on Sales, § 429 *et seq.* ; *Hodgeden* v. *Hubbard*, 18 Vt. 504 ; *Johnson* v. *Peck*, 1 Wood & M. 334 ; *Rowley* v. *Bigelow*, 12 Pick. 306. The testimony demurred to here neither proves nor tends to prove this state of facts. It appears only that the goods were sold in consequence of representations, made by the son of the purchaser, that his father was solvent, and that shortly afterwards, — how long is not shown, — the purchaser failed in business and made an assignment for the benefit of his creditors. We cannot from this meagre proof infer the existence of a state of facts that would warrant a reclamation of goods once delivered, the title to which had become absolute in the purchaser.

Neither can the judgment of the court below be supported upon the theory that there was a mutual rescission of the contract of sale and a re-investiture of title in the seller before the execution of the general assignment to creditors. When parties agree to rescind a sale once made and per-

fected, the same formalities of delivery and acceptance are necessary to revest the property in the original vendor which were necessary to pass it in the first instance from him to the vendee. *Quincy* v. *Tilton,* 5 Greenl. 277 ; *Miller* v. *Smith,* 1 Mason, 437. There was in this case no delivery at all. There was a contract to re-sell or rescind, but before it was made effective by a delivery, either actual or constructive, it was broken up by the general assignment, and the goods were taken possession of by the assignee.

*Judgment reversed, and judgment here sustaining the demurrer.*