The LaFayette Mutual Building Association, Respondent, v. Alois Kleinhoffer and Caspar Stolle, Appellants.

**St. Louis Court of Appeals, April 1, 1890.**

1. **Practice, Appellate:** POINTS NOT RAISED IN TRIAL COURT. Neither a defense based upon the statute of frauds, nor an objection to the right of the appellee to explain an ambiguity in a writing by parol evidence, can be urged on appeal, when the record does not show that the point was raised in the trial court.

LaFayette Building Ass'n v. Kleinhoffer.

2. ———— : ERROR INDUCED BY THE APPELLANT. Nor is error assignable by an appellant with respect to an instruction to the jury, or a course of ruling by the trial court, which was in accordance with the theory on which he tried the cause.

3. **Evidence :** IN AID OF CONSTRUCTION OF WRITTEN CONTRACT. When the meaning of a contract in writing is doubtful, resort may be had to the circumstances under which it was given, to ascertain the same.

4. **Principal and Surety :** CONSIDERATION. An agreement, whereby one binds himself as surety for the performance by a contractor of a contract for the erection of a building, is invalid, if it is made after such contract has been entered into between such contractor and the party contracting with him, and without any new consideration.

5. **Witness :** COMPETENCY. In an action upon a contract, brought by the assignee of one of the contracting parties, who is dead, against the other contracting parties, such other contracting parties are not competent witnesses in relation to the contract, owing to the death of the one party.

6. ——— : ———. The deposition of one of several contracting parties, though in relation to the matter of contract, is not rendered incompetent as evidence by the death of another of the contracting parties after the taking of the deposition.

7. **Principal and Surety :** MECHANIC'S LIEN. The surety for the performance on the part of the contractor of a contract for the erection of a building is liable for the costs properly taxed in a suit for the establishment of a mechanic's lien ; but also *held* (THOMPSON, J., *dissenting*) that such liability will not extend to costs incurred in the advertisement and sale of the property subjected to lien, since these could have been avoided by payment of the lien, when established by the judgment.

8. ——— : ——— : PRESUMPTIONS. The costs taxed in the suit for the establishment of such lien are *prima facie* correct.

9. ——— : ——— : JUDGMENT AGAINST PRINCIPAL. *Semble,* that a judgment against the contractor for the erection of a building, establishing a mechanic's lien, is *prima facie,* but not conclusive, evidence of such lien as against a surety of such contractor.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Lubke & Muench*, for the appellants.

*Fisse & Tiffany*, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This is an action on a contract of guaranty indorsed on a building contract. The plaintiff sues as the assignee of Louis Joyeux. Joyeux, desiring to build a house upon ground owned by him, entered into a written contract with William Bormans, by which the latter agreed to do the work and furnish the materials for the sum of twenty-nine hundred dollars, payable in certain installments. Joyeux was a member in the plaintiff building association, and the association agreed to advance the money to him to enable him to make the payments provided for in the contract upon the security of the deed of trust upon the property, provided he would furnish satisfactory personal security for the performance of the contract on the part of the builder. Thereupon, he presented the contract to the managing officer of the building association, with a clause of guaranty indorsed upon it, signed by the defendant Alois Kleinhoffer. Kleinhoffer's responsibility was not known to the plaintiff's manager, and besides the plaintiff required two sureties and advised Joyeux of this fact. Thereupon, Joyeux procured the defendant Caspar Stolle to sign the clause of guaranty, as an additional surety, and brought the contract back to the plaintiff's officer with both names signed, and it was then accepted as satisfactory. Thereupon, the deed of trust was made, and the plaintiff advanced five separate installments of money, due under the contract by Joyeux, to Bormans, the builder. The evidence shows that four of these installments were in fact paid over to Bormans, and Bormans' receipts therefor were put in evidence. But, as to the first installment, the evidence, as we read it, goes no further than to

show that the money was paid to Joyeux. We do not see distinct proof that it went into the hands of Borman's,—Bormans' receipt for it was not put in evidence.

Bormans absconded while the work was in progress, leaving it unfinished. Mechanics' liens were established against the house, and, under two of them, it was sold and bid in by the plaintiff. Joyeux assigned his cause of action for the breach of the contract of guaranty to the plaintiff, and the plaintiff has brought this action thereon as Joyeux's assignee. Joyeux died before the commencement of this action. At the trial the action was dismissed as to Bormans. The plaintiff had a verdict and judgment against Kleinhoffer and Stolle, the sureties or guarantors, in the sum of twenty-one hundred and ninety-four dollars and eighty-nine cents, and these defendants prosecute the present appeal. So much of the remaining facts, as are material to be stated, will be stated in connection with different assignments of error made by the appellants.

I. The contract of guaranty, upon which the action is brought, appears to be indorsed upon the builders' contract, below the signatures of the principal parties thereto, in the following words :

"I hereby bind myself for the execution of this contract in all its parts. St. Louis, January 3, 1884.

"ALOIS KLEINHOFFER,

"CASPAR STOLLE."

The first point of the appellants is that the action is founded upon a written contract, whereby the appellants are alleged to have become answerable for the "debt, default or miscarriage of another person, *i. e.*, Bormans ; that, under the *statute of frauds*, proof of such contract could consist only in a writing signed by Kleinhoffer and Stolle, or by some other person by them thereto lawfully authorized. R. S. 1879, sec. 2513. The argument is that the answer of defendants denied the contract as alleged ; that the proof showed an

instrument which is silent in its most essential requirements, in that it fails to show for whom the undertakers bound themselves,—whether as sureties for Bormans or Joyeux. The argument further is that, as the contract contains covenants to be performed by both Bormans and Joyeux, and as the memorandum signed by the sureties does not show for which they intended to bind themselves, it is void.

This assignment of error must be disposed of with the observation that the statute of frauds is not pleaded; that this question was not brought to the attention of the trial court in any way, so far as the record shows, either by objections to evidence, requests for instructions, or otherwise. It has been held in this state that in actions for breach of contract to purchase *land*, and for *specific performance*, the statute of frauds need not be pleaded, but the plaintiff must prove a contract valid within the statute. *Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152. These decisions, which were rendered by the late supreme court commission, overturned in part what had previously been the settled rule in this state, and introduced confusion into our procedure on this question. This confusion is increased by the very recent decision of the Kansas City Court of Appeals, that, "The common-law rule, that one, who would avail himself of the statute of frauds, must especially insist upon it in pleading or be deemed to have waived the benefit of its provisions, is in force in this state." *Taylor v. Penquite*, 35 Mo. App. 399. In this confusion of the authorities we must adhere to our own recent decision, made after careful deliberation and adhered to after a motion for rehearing, in which we held that, for the statute of frauds to be available as a defense on appeal, it must appear from the record that it was brought to the attention of the trial court *in some way;* that it is *waived* unless distinctly asserted in the trial court;

and that it cannot be set up for the first time in the appellate court; for parties must try their cases in the courts of *nisi prius*, and cannot make their defenses for the first time on appeal. *Scharff v. Klein*, 29 Mo. App. 549.

It is not necessary to say anything upon the argument that a portion of the answer may be construed as a special plea of the statute of frauds ; there is nothing in the answer which can fairly be so construed. It is, therefore, immaterial, so far as any defense under the statute of frauds is concerned, that the clause of guaranty does not state for which party to the contract the signers became guarantors.

II. The next objection is a renewal of the same point, but without special reference to the statute of frauds. It is that the *ambiguity* in the written contract is a *patent one*, such as cannot be explained by parol testimony, and that therefore, regardless of the statute of frauds, the undertaking is so imperfect that it will not support a judgment against Kleinhoffer and Stolle. It is added in argument, that, whether parol evidence to explain the ambiguity was competent or not, no evidence was offered by the plaintiff to show for whom Kleinhoffer and Stolle became sureties.

Some observations may be made with reference to this assignment of error, which were made with reference to the preceding. We cannot discover in the record the trace of any suggestion made at the trial that the obligation was void in the sense that it did not state for which party the obligors entered into the undertaking. It is evident that, throughout the trial, both parties assumed this fact as not being a point of contention at all, and tried the case on the theory that the defendants became sureties for Bormans. This will appear from the following instruction, *requested by the defendants*, and given by the court: ''The court instructs the jury that, by the contract in suit, the defendants,

Kleinhoffer and Stolle, *bound themselves for the performance, on the part of Bormans*, of his contract to build a house according to the specifications in evidence, to the amount of twenty-nine hundred dollars, and if said Joyeux and Bormans afterwards substantially changed said contract between themselves, without the assent of said Kleinhoffer and Stolle, then the said Kleinhoffer and Stolle are thereby discharged from liability under the original agreement." This disposes of this assignment of error; for a party cannot try a cause on one theory in the trial court, and then change front and argue it on another theory in the appellate court,—unless we are to regard the writing as so ambiguous as to mean nothing without parol explanation, which explanation was not given. If this view is to be taken of it, then it afforded no evidence of a contract on the part of the defendants to guarantee the performance *by Bormans* of the contract on his part, and the objection was reached by demurrer to the evidence.

On this point it is to be observed that there is nothing impossible in the conclusion that it was intended as a guaranty of the faithful performance of the contract by *both parties*. It is not an unavoidable conclusion that it was intended as a guaranty of the performance by one party merely, and certainly the obligors, when they signed, must be taken to have meant *something*. In the absence of parol explanation it was for the court to say what they did mean. There is a well-known practice of executing such guaranties *by builders*, because they are frequently not pecuniarily responsible, and such guaranties are necessary to indemnify the owners in the case of the liens of subcontractors and materialmen being charged on the property. But I suppose that no lawyer or judge in St. Louis ever saw a building contract, where such a guaranty was furnished *by the owner;* and this for the obvious reason that not only the building itself, but

also the lot of ground on which it stands, is an adequate security under the statute relating to mechanics' liens, for the performance of the contract on the part of the builder. This was evidently the assumption of both parties at the trial, else the paper would have been objected to on some general ground; but it was only objected to, when offered in evidence, on the ground that the assignment of Joyeux to the plaintiff should have been first offered in evidence. The argument, which is now directed against it, is the suggestion of ingenious counsel who have been called into the case since the trial. To give countenance to such an objection would be not only to allow the case to be disposed of on appeal on a different question from that on which it was tried, but it would also be to disregard the principle that an instrument is to be construed in view of its entire purport and meaning, and to hold that it has no meaning, when all men having any experience in the matters to which it relates would agree that it means one thing, and one only.

But there is another view. Where the meaning of an instrument is doubtful, resort may had to the circumstances under which it was given. Here the plaintiff's manager proposed to advance the money, not to Joyeux, but direct to Bormans, the builder, and did so advance it. The plaintiff, therefore, wanted security that Bormans would perform the building contract and save the property on which the plaintiff advanced the money free from mechanic's liens. He thereupon demanded that Joyeux procure such security. Joyeux thereupon brought him the name Kleinhoffer indorsed to this guaranty; this he rejected as insufficient. Joyeux thereupon brought him the additional name of Stolle indorsed to it. This was circumstantial evidence upon which the jury would act, and upon which all men would act,—that the signers of this guaranty intended to guaranty the performance of this contract by Bormans and not by Joyeux.

III. The real defense upon which the case was contested was set up in the answer of Kleinhoffer and Stolle in the following language: "That their names on the back of the exhibit were placed there by them without *consideration*, and at a time when there was nothing written over the said signatures, and after the work contemplated by said contract, Exhibit A., had been commenced and partly done." It is to be observed that the contract itself shows that it was signed by the principal undertakers on the *fifteenth of February*, and the clause of guaranty, which is the foundation of the action, is dated on the *third of January*. As to so much of this clause of the answer as states that, when the contract was signed, there was nothing written over the signatures, we may observe that there was no evidence in support of it.

As to the final allegation, that the work contemplated by said contract, Exhibit A., had been commenced and partly done, when it was signed, it is assigned for error that two witnesses, Hardwig and Miller, were offered by the defendants to support this allegation, and that the court excluded their evidence on the objection of the plaintiff. This assignment, in point of fact, is borne out by the record as to the witness Miller only, as the testimony of Hardwig on that subject was admitted. This court reluctantly decided that an action cannot be maintained against a surety in a bond given by a builder to indemnify the owner against mechanics' liens, where the bond is executed *after the building contract*, and without any new consideration. *Ring v. Kelly*, 10 Mo. App. 411. The rule of the common law, which allows a party to impeach his solemn written promise upon the ground of a want of consideration, has been often criticised as a rule which proceeds on a lower plane of honesty than the analogous rule of the civil law, and which in many cases sanctions deliberate breaches of faith and leads to

LaFayette Building Ass'n v. Kleinhoffer.

business immorality.   The courts are nevertheless bound to administer it, because it is a settled principle of law which they have not the authority to set aside.   Such a principle, however, ought not to be applied except upon evidence which is reasonably strict and certain. One who has deliberately made a promise in writing ought not to be allowed to escape it on loose and vague evidence, especially where a third party has advanced money on the faith of that promise ; but the trial courts must be trusted to see to this in the exercise of the limited discretionary power, which the law allows them in setting aside verdicts as against the weight of the evidence, which power the appellate courts do not possess. If the evidence *had a tendency* to show that work under the contract had been commenced before the writing of guaranty was signed, we must hold that the trial court was bound to admit it in the first instance, and allow its weight to be determined by the jury.   This court is of opinion that the evidence had such a tendency, and that the trial court erred in excluding it.

IV.   The defendant requested, and the court refused, the following instruction: "The court instructs the jury that, if they believe, from the evidence, that Kleinhoffer and Stolle put their names on the back of the paper introduced in evidence, after Joyeux and Bormans had made their contract, and after Bormans had entered upon the performance of said contract, then there is no consideration for their undertaking, and said Kleinhoffer and Stolle are not liable in this action."

There was no substantial evidence in support of this hypothesis of this instruction.   The witness Hardwig, who did the stonecutting for the house under a contract with Bormans, testifies that he *got the contract* from Bormans "in the latter part of November or the, latter part of December, 1883 —in the fall of 1883."   He also testified : "I done all the cut stone work ; I done work right along from the time I got it.   The moment

I got the work I started on it." This evidence does not at all tend to show that at the time, when Bormans let the work to the witness and when he went to work at the job, Bormans had commenced work *under the contract* in evidence. This might have been otherwise, if Bormans' deposition had been admitted.

V. We shall next dispose of the assignment of error that the trial court erred in excluding, without qualification, the testimony of the defendants, Kleinhoffer and Stolle. The theory of this exclusion was that Joyeux, the other party to the contract, being dead, these witnesses were incompetent under the provision of section 4010 of the Revised Statutes of 1879. This question need not be argued. It is settled by the decision of the supreme court against the appellants in, *Meier v. Thieman*, 90 Mo. 434, and other cases which have followed that decision.

But it is argued that these witnesses were competent so far as the petition alleges a cause of action in favor of the plaintiff, otherwise than as assignee of Joyeux, to rebut the testimony of Mr. Rowse, the plaintiff's managing officer. The answer to this assignment of error is that it does not appear from the record that the petition does state another cause of action. All the questions which were put to them, and which the court excluded, related to the circumstances under which they signed the contract of guaranty, and no question was put to them and excluded, tending to elicit an answer which would reach any matter outside of this.

VI. The deposition of Bormans, taken in a prior action depending, in which Joyeux, the plaintiff's assignor, was plaintiff, and the present defendants were defendants, was offered in evidence and excluded by the court, apparently on the same ground. This ruling is assigned for error, and the same reasons are renewed in support of the assignment. This deposition was taken on behalf of Joyeux. The record recites that

this deposition was "taken in the same suit under a different style—in the suit of Joyeux v. Stolle *et al.*, by the plaintiff, and during the time when Joyeux was alive." The court erred in this ruling. The deposition was competent, because taken when Joyeux was living. *Coughlin v. Haeussler*, 50 Mo. 128; *Breeden's Adm'r v. Feurt*, 70 Mo. 624. It was material to the issues in the present action, and should have been admitted. The fact, that this plaintiff was not a party to the record in that action, does not exclude the deposition, since the plaintiff claims through the party who took the deposition, and the essential issues in the two actions are assumed to be the same. *Parsons v. Parsons*, 45 Mo. 265; *Adams v. Raigner*, 69 Mo. 363.

VII. The following instruction on the measure of damages was given at the request of the plaintiff:

"1. The jury are instructed that, if under the other instructions in this case they find in favor of the plaintiff, they will assess the damages which the plaintiff is entitled to recover at such sum as they may believe from the evidence to be the amount paid by said Joyeux, or by the plaintiff for him, upon the contract price of said house and the amount of the judgments and costs, which they may believe from the evidence was paid in satisfaction of any claims of mechanics or materialmen for labor and material, done and furnished on said house, and from the aggregate amount of these sums the jury will deduct the contract price of the said house, and the price of any work done and not included in the contract price, and add interest at the rate of six per cent. per annum from the time this suit was filed to the amount of such difference."

This instruction is criticised on the ground that it did not submit to the jury the question, whether the costs which had been incurred in the mechanics' lien suits had been *reasonably incurred*. It is to be observed that all these costs were what are termed

*court costs*, and none of them were attorneys' fees. They were costs which had been taxed in the various mechanics' lien suits by the proper taxing officers. The presumption of right acting, which attends ordinary official conduct, is sufficient to raise the inference, *prima facie*, that they were correctly taxed. If they were incorrectly taxed, it was for the defendant to rebut this inference. No evidence was offered for that purpose in the trial court; and this objection, like most of the others, is an attempt to inject into the case on appeal a question which was not raised in any way at the trial.

VIII. It is also objected to this instruction that it does not except those costs which were incurred after the levy of the execution upon Joyeux's property, nor the costs of selling that property and making the sheriff's deed to the plaintiff corporation, which was the purchaser at the sheriff's sale. All these costs, it is argued, were taken out of the proceeds of the sale. The theory of the defendants on this point is that, after the liens were established by judgment, and Joyeux' property was about to be taken on the executions, it became his duty to pay off the lien judgments; that he had no right to increase the charge on the sureties of Bormans by suffering a sale of his property at their expense; that this non-action on his part was unreasonable, or a misfortune which the law will not permit him to shift upon the appellants; and, finally, it is argued that the law imposes on Joyeux the active duty of making reasonable exertions to render the injury as light as possible.

My associates are of opinion that this point is well taken. They take the view that, the rights of the plaintiff being derivative from Joyeux, the plaintiff can recover only such damages as Joyeux could have recovered,—in which view I concur. They also take the view that Joyeux could not have recovered the costs of advertising his own property for sale,—that such costs

cannot be regarded as general damages such as naturally flow from a breach of their contract on the part of the defendants. In this view I do not concur. My view is that these costs of sale were as much a part of the cost to which the lien claimants were put in realizing their debts as the court costs proper; that they were equally paid out of the estate of Joyeux, and form equally a part of the loss suffered by him. The argument founded on the doctrine of such cases as *Douglas v. Stephens*, 18 Mo. 362, that he ought not to recover such costs, because he could have averted them at a *trifling expense*, to-wit, by paying off the liens, I do not regard as properly applied to such a case. If he had been a man of means and had had the money with which to pay off the liens, he could thus have averted these damages; if he was a poor man without such means, he could not have done so. Besides this argument would show that he would not have been entitled to recover of these guarantors any costs incurred in the mechanics' lien suits, since he could have averted such suits by paying off the liens before suit brought. I also think it a fair argument to say that Joyeux did not become surety for Bormans, but that Kleinhoffer and Stolle did, and that the sureties themselves might have protected themselves from the costs by coming forward and paying off the liens before the property went to sale under the lien judgments; and as they were sureties for Bormans, and as Joyeux was not, it was principally their duty to do it, and not his.

IX. In the following general instruction the court submitted to the jury the grounds on which the plaintiff was entitled, if at all, to recover.

"2. If the jury believe from the evidence that in or about the month of February, 1884, Louis Joyeux, now deceased, and the defendant, W. A. Bormans, executed the contract read in evidence, dated February 15, 1884, for the building of the house therein described,

and that, before the execution and delivery thereof, the defendants, Alois Kleinhoffer and Caspar Stolle, signed the writing on the back of said contract, viz.: 'I hereby bind myself for the execution of this contract in all its parts. St. Louis, January 3, 1884.' And if the jury further believe from the evidence that the said defendant Bormans entered upon the performance of the work mentioned in said contract, and that he received from the said Joyeux, or from the plaintiff on account of said Joyeux, various sums of money as the work progressed in payment for the same, but that said Bormans never completed the erection of said house ; and that he failed to furnish at his own cost or to pay for all the work, labor and materials necessary for the completion of said house, and the improvements mentioned in said contract, and that, by reason of such failure on the part of said Bormans, various persons, who had furnished material or done work upon the said building as sub-contractors under the said Bormans, filed mechanics' liens against the said house and the lot of ground on which the same was erected, and that such persons, or some of them, thereafter instituted suits for the purpose of enforcing such mechanics' liens, and in such suits obtained judgment for the amount of their several claims against the said defendant Bormans, and that the said judgments were declared a lien against the house of said Joyeux, and the lot of ground on which the same was erected, and that thereafter the said house and lot was sold by the sheriff of the city of St. Louis under execution issued upon the said judgments for the said mechanics' liens, and that the said mechanics' liens were paid out of the proceeds of said sale of said house and lot ; and if the jury further believe from the evidence that the said Joyeux has transferred and assigned to the plaintiff all his right of action against the defendants herein arising out of the said contract, and the said writing on the back thereof signed by the said defendants, Kleinhoffer and Stolle, to the plaintiff, the

LaFayette Mutual Building Association; then the jury will find in favor of the plaintiff, and will assess the damages herein according to the directions in another instruction given you, unless the jury find ·from the evidence that a material change was made in the contract between Joyeux and Bormans as defined in other instructions.''

The first objection to this instruction is, that it assumes that the appellants necessarily signed as sureties for Bormans. We have pointed out that this was the theory of both parties at the trial, and we have above quoted an instruction, given at the request of the defendants, which contained this hypothesis.

The next objection taken to it is, that it makes Kleinhoffer and Stolle liable for all the lien judgments rendered against Bormans, notwithstanding the proof that some of these embraced work and material not ordered by Bormans at all. We take it that the judgments were at least *prima facie* evidence against the sureties upon this question, as Bormans was a party defendant in all of the actions in which they were rendered. The observations made in argument in support of this point, that this instruction is evidently drafted upon the idea that the sureties were conclusively bound by the judgments against Bormans, seems to us well taken. It has been held in this state that the sureties of an administrator are *conclusively* bound, in the absence of fraud or collusion, by judgments against their principal. *State to use v. Holt*, 27 Mo. 340; *Dix v. Morris*, 66 Mo. 514; *State ex rel. v. Rucker*, 59 Mo. 25; *State ex rel. v. James*, 82 Mo. 516; *Taylor v. Hunt*, 34 Mo. 205; *State ex rel. v. Creusbauer*, 68 Mo. 254. But, as pointed out in *State to use v. Martin*, 18 Mo. App. 468, 474, this line of holdings seems to rest on the peculiar language of an administrator's bond, by which the surety agrees to perform all things required by law, '' or the order or decree of any court having jurisdiction,'' and it was held that, there being no such provision

in a guardian's bond, the sureties of a guardian might show anything contrary to the settlement, if they could. Whether the principle applies to sureties upon undertakings not given in judicial proceedings, such as guarantors, is more doubtful. See the note of Mr. Freeman, 83 Am. Dec. 380, *et seq*. It has been held by the supreme court of the United States that a judgment confessed by a principal is admissible in evidence to charge his guarantor, though it is not conclusive. *Drummond v. Prestman*, 12 Wheat. (25 U. S.) 515. We apprehend that this expresses the correct principle; at least, in the absence of direct authority, it is as far as we feel willing to go.

There was evidence tending to show that so-called extra work and materials, of the aggregate value of fifty-two dollars and eight cents, were performed and furnished by Hammer & Weber on a separate order made directly by Joyeux; that these materials were included in their bill against Bormans, and were a part of the account for which they established a lien against the property. This evidence was not contradicted, and, while we do not precisely see on what calculation the jury arrived at their verdict, we apprehend that this item should have been excluded from their consideration.

X.   The verdict of the jury, which was for the sum of twenty-one hundred and ninety-four dollars and eighty-nine cents, evidently included the four hundred dollars, of which the first installment due under the building contract consisted. As intimated in the early portion of this opinion, the evidence did not fairly tend to show that this payment had ever been made *to Bormans*. The only testimony on the question was delivered by the managing officer of the plaintiff corporation, and so much of it as relates directly to this point was as follows:

"*Q*. How much was altogether paid to Mr. Bormans, and charged in this way to Joyeux? *A*. Two thousand dollars. I cannot recollect now exactly, excepting by

my books; but there are two thousand dollars there, sixteen hundred dollars, rather."

The witness here evidently alluded to the four vouchers evidencing the payment of the second, third, fourth and fifth installments, and showing that the money had been received by Bormans, each installment being four hundred dollars, and the aggregate being sixteen hundred dollars. The testimony of the same witness continued thus:

By the court: "*Q.* The receipt for the first installment is not there? *A.* No, sir; only two, three, four and five."

By Mr. Fisse (counsel for the plaintiff): "*Q.* You have that at your office, I suppose? *A.* I suppose so, yes. The first payment, if I recollect right, was something more than that. There was, if I recollect right, a little lien or loan; Joyeux put some money in my hands, and I paid the lien or loan.

"*Q.* Do you recollect the amount of the first payment? *A.* If I recollect it—I suppose enough over four hundred dollars to pay off the lien; my ledger would tell, but I don't remember.

"*Q.* (Handing book to witness.) What is this book? Is this the ledger you refer to? *A.* Yes, that is the ledger of the building association (meaning the plaintiff).

"*Q.* By whom is that book kept? *A.* By myself.

"*Q.* Do you know that the entries in that book are correct? *A.* Yes.

"*Q.* And that they were made at the time of the transaction? *A.* Yes.

"*Q.* Will that book assist you, refresh your recollection with respect to the first payment? *A.* Yes, sir.

"*Q.* Please refer to it and tell us what it was? *A.* The account of Louis Joyeux is here on page 362; he is charged on the tenth of March"—(interrupted). Counsel for defendant object to the entry as incompetent; which objection is *sustained* by the court.

"Q. Do you recollect what money was paid to Bormans? A. I cannot remember; if the voucher is not in your hands it is probably at my office, which would show the fact."

At the close of the examination of the witness the court addressed the plaintiff's counsel thus: "You have put in no testimony about that first payment; I do not know whether you overlooked it." No reply was made to this suggestion, nor was the voucher concerning the first payment produced or offered in evidence; nor was there any evidence of the payment other than that above recited. As the witness could not recollect the fact of the payment, so as to state it from his own recollection, even after consulting his ledger, which had been kept by himself, we must conclude that there was no substantial evidence afforded by his statements of the payment having been made.

It is plain, from the amount which the jury have returned as their verdict, that they included this first installment of four hundred dollars in the computation. In so far as they did this, their verdict is without support in the evidence, and, if the state of the evidence as to this item should be the same, this error should be avoided on another trial.

The judgment will be reversed, and the cause remanded. All the judges concur.