JAMES OLIVER ET AL., RESPONDENTS, v. ZELDA HIRSCH, ETC., APPELLANT.*

Kansas City Court of Appeals. May 9, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 593, p. 701, n. 87; section 618, p. 718, n. 50; section 640, p. 748, n. 28; 4CJ, section 2609, p. 701, n. 49; Justices of the Peace, 35CJ, section 226, p. 612, n. 98; section 230, p. 622, n. 54; Sales, 35Cyc, p. 118, n. 48; p. 127, n. 59; p. 130, n. 86; p. 146, n. 11; p. 557, n. 93; p. 566, n. 85; p. 574, n. 84.

*Edwards, Kramer & Edwards* for respondent.

*Mertsheimer & O'Donnell* and *Charles A. Stratton* for appellant.

BLAND, J.—This suit arose in a justice court by the filing therein by plaintiffs of the following statement:

"Plaintiffs state that at all times herein mentioned, they were co-partners doing business under the firm name of Oliver Knitting Company with their principal offices in Philadelphia, Pennsylvania.

"That at all said times, the defendant was engaged in business under the trade name of Hirsch Dry Goods Company, in Kansas City, Missouri. That on or about July 15, 1921 at the special instance and request of the defendant plaintiffs sold and delivered to defendant goods, wares and merchandise aggregating $1080.

"That thereafter said defendant returned to said plaintiffs a portion of said merchandise aggregating according to the original invoice price, the total sum of $649.25.

"That plaintiffs were compelled to pay the freight charges on said returned merchandise amounting to $11.11.

"That said merchandise was wrongfully returned but plaintiffs accepted same and credited defendant's account with the invoice price of said returned merchandise, to-wit, $649.25, and charged said defendant's account with said freight charges and there is now due and owing from defendant to plaintiffs on account of said merchandise kept and on account of said freight charges, a total of $441.86 as shown by an itemized statement and duplicate invoice thereof hereto attached and marked 'Exhibit A.'

"That plaintiffs have made demand on the defendant for the payment of said balance but defendant refuses to pay same.

"Wherefore plaintiffs pray judgment against defendant for $441.-86."

Defendant filed no pleadings as none is required of defendant in a justice court. There was a verdict and judgment in the circuit court in favor of plaintiffs in the sum of $527.82 and defendant has appealed. Respondent has not favored us with a brief.

The evidence tends to show that at Philadelphia, on July 15, 1921, plaintiffs shipped two cases of merchandise consisting of ninety dozen pairs of worsted hosiery, enclosed in pasteboard hosiery boxes, to the defendant at Kansas City and delivered them to the Philadelphia & Reading Railroad Company in Philadelphia for transportation "via Lehigh Valley, Clover Leaf, Rock Island thru car," freight prepaid; that the two cases were returned to plaintiffs on August 19, 1921, and when opened a number of cardboard boxes of hosiery were found empty. The cases returned contained fifty-four and one-half dozen pairs of hosiery, or thirty-five and one-half dozen pairs less than when they were shipped.

Plaintiffs introduced in evidence the deposition of their bookkeeper who described the system of bookkeeping used by them. The testimony of the bookkeeper tended to show that plaintiffs' books disclosed that on March 9, 1921, plaintiffs received from their sales representative in Chicago an order from the "Hirsch Dry Goods Company" for sixty dozen pairs of ladies wool hosiery, various sizes, at $13 per dozen and also an additional sixty dozens pairs of hosiery at $10 per dozen, as follows:

". . . for sixty dozen Ladies Wool Hosiery, various sizes, at $13 per dozen; also for sixty dozen additional, at $10 per dozen; as follows: fifteen dozen No. 501; fifteen dozen, 503; fifteen dozen, 515; fifteen dozen. 520, making a total of one hundred twenty dozen for a total of $1380."

A copy of the order was introduced in evidence but it does not purport to be signed by the defendant nor is there any evidence that it was so signed.

The witness further testified that some correspondence was had between plaintiffs and defendant; that, under date of July 21, plaintiffs received a letter from the defendant returning the bill of lading that had been sent defendant covering the shipment and stating that defendant "would not accept the shipment from the railroad station as they canceled the order in a letter dated June 25th." The witness testified that, "We, however, never received a letter from the Hirsch Dry Goods Company canceling the order. In fact, the first we heard from them was after the order was shipped and bills sent. The first we heard from them was under date of July 21st;" that thereafter plaintiffs telegraphed defendant that they "would not accept the re-

turn of the goods'' and confirmed this by letter dated July 27th. Counsel for defendant at this state of the testimony made the following objection:

''I want to object to all this testimony as the pleadings of the plaintiffs state that they accepted the goods back and by the fact of accepting the goods they rescinded the contract. According to their pleading, the only question in issue is the shortage, or, as the pleadings say, they are the goods we kept. The contract was mutually rescinded, but, as plaintiffs say, defendant kept the goods. Now, the only question is, whether or not there is a shortage.

''THE COURT: I think the shorter way will be to read the deposition. It doesn't seem to be long.''

An exception was taken to the ruling of the court. Counsel for defendant then stated—

''MR. MERTSHEIMER: I would like the record to show the same objection to the presenting of these exhibits as to the deposition, on the ground that they have nothing to do with the contract.''

The exhibits were then introduced in evidence consisting of a letter of plaintiffs dated July 27, stating that plaintiffs were surprised to know that in defendant's letter of July 21, she would refuse to accept the shipment; that plaintiff had a regular order for the goods which was signed by defendant; that plaintiffs had no record of any cancellation and they could not accept cancellation where the goods were ordered and shipped according to specifications; a letter, dated July 29, 1921, written by defendant to plaintiffs in answer to plaintiff's letter of July 27, stating that defendant was again returning to plaintiffs the bill of lading covering the goods that were shipped ''after we canceled order on June 25th,'' that defendant would not accept the goods under any consideration; that the goods were plaintiffs and asked that plaintiffs advise defendant on what railroad they wanted the goods shipped back to them; a letter from the Rock Island railroad company, dated Kansas City, Mo., August 13, 1921, addressed to plaintiffs, stating that the shipment had been delivered to the defendant, a copy of the credit invoice showing that on August 19, 1921, defendant was credited by plaintiffs with fifty-four and one-half dozen pairs of hosiery amounting to $649.25 ''for merchandise returned.'' Plaintiffs thereupon rested their case and a demurrer to plaintiffs' evidence was offered by defendant. When the demurrer was offered, defendant's counsel stated—

''I think the plaintiffs have not made a case. I think they can recover only by showing that the shortage occurred in our hands. They have not attempted to do that. We do not know whether there was a shortage or not. The only responsibility we can be held to is for shortage while in our possession. Now, as to whether or not we have the right to rescind that contract is not in question. The mere fact that we offered them back to the railroad, that the railroad carried

them and that the plaintiffs accepted them, is evidence that the contract was rescinded. Now, unless they can show that that shortage occurred between the time that we got them and the time that they were delivered back to the carrier, they have failed to make their case."

Thereupon a colloquy occurred between the attorney for defendant and the court and the former insisted that defendant would be liable for the goods returned only in case the plaintiffs showed that they were lost between the time they were delivered to the Philadelphia & Reading Railroad Company by plaintiffs at Philadelphia and at the time they were delivered to the defendant in Kansas City, and not if any shortage occurred between the time the goods were delivered to the carrier at Kansas City by the defendant and shipped back to the plaintiffs. It was stated by counsel that a presumption rose that the shortage occurred after the defendant delivered them to the railroad at Kansas City for shipment back to Philadelphia.

The demurrer to plaintiff's evidence was then overruled. Defendant's evidence tends to show that defendant was doing business as the Hirsch Dry Goods Company in Kansas City; that the goods arrived in Kansas City in July or August, 1921, and that a Mr. Johnson, a transfer man, under orders from defendant picked up all goods at the railroad stations in Kansas City consigned to the defendant, but he was instructed not to take out these particular goods in controversy from the railroad station should they arrive; the defendant— ". . . received this invoice from the plaintiffs, which they tried to ship regardless, she canceled it right away, so she ordered Mr. Johnson not to take these goods out as they would not receive it."

But Johnson made a mistake and took the shipment from the railroad and delivered it to defendant. When she received the shipment at her place of business she did not know from whom it came and an employee opened one of the boxes and found that it contained the hosiery shipped by plaintiffs. The box was immediately nailed up again and, without any of its contents being taken out, Johnson took them back to the freight station the next morning and shipped them to plaintiffs. Harry Hirsch testified that he was working for defendant and opened one of the boxes and found that it contained the hosiery, the order for which had been canceled, and that he immediately replaced them and nailed up the box and did not take any of the contents out of it. This was all the testimony on behalf of defendant. Defendant then offered another demurrer to the evidence. A colloquy again occurred between counsel and the court as to what was involved in the case. Counsel for defendant stated that he was not claiming that defendant never had possession of the goods and that—

"*We make no question as to the rescission of June or July, because those goods did actually come into our possession.* Now, the rescis-

sion took place when the plaintiffs accepted these goods back. They did not have to do that. If they had not accepted the goods our rescission would have amounted to nothing. But the minute they accepted these goods back they completed the rescission and that rescission dates back to the delivery by defendant to the carrier. Now the moment the plaintiffs delivered the goods to the common-carrier, the P. & R. Railway, in Philadelphia for shipment to Kansas City, the title vested in us—laying aside, now, consideration of the previous attempt to rescind the contract—and the title remained in us until such time as we delivered them back to the carrier for shipment back to plaintiffs. And the minute the plaintiffs accepted those goods in Philadelphia the title relates back to the time they were shipped.'' (Italics ours.)

The court afterwards stated to the effect that as soon as the goods were placed in possession of the railroad company at Philadelphia they belonged to the defendant because delivery to the carrier was delivery to the defendant, and from that time on they were in her possession, "and if she wanted to rescind and carry out the rescission, it was her duty to get them back. Now if they were stolen while in charge of the carrier she is responsible, because the carrier was her agent, and not the agent of the plaintiffs in Philadelphia. Therefore, Gentlemen, I think the plaintiff is entitled to recover in this case.'' Counsel for defendant then stated, "That is the only question of law in the whole case.'' The court then remarked that he would instruct the jury to find for plaintiffs; whereupon counsel for defendant said—"I think we are entitled to go to the jury as to whether they believe there was any shortage.'' The court agreed that this was a question for the jury and did not give the peremptory instruction for plaintiffs. The court overruled defendant's demurrer to the evidence, thereupon defendant requested and the court refused to give the following instructions on behalf of the defendant:

"1. The court instructs the jury that if they believe from the evidence that the goods mentioned in evidence were delivered by defendant to a common carrier for return to plaintiff that the acceptance of said goods by plaintiff is in law a consent to a rescission of the contract by plaintiff.

"2. The court instructs the jury that if you believe from the evidence that plaintiff delivered the goods mentioned in evidence to a common carrier, and if you further believe from the evidence that the goods so delivered by defendant were accepted by plaintiff, then the delivery to the common carrier by defendant was a delivery to plaintiff. And if you further believe from the evidence that defendant returned all goods received by her from plaintiff to the common carrier, then your verdict shall be for the defendant.

"3. The court instructs the jury that there is only one issue in this case and that is whether or not defendant delivered to the com-

mon carrier for return to plaintiff all of the merchandise mentioned in evidence, received by defendant.''

We have set out in considerable detail the contention of defendant at the trial below for the reason that defendant has filed a brief here in which she attempts to present the case on an entirely different theory than that upon which it was tried. There is no rule more firmly established than that the case must be disposed of upon the same theory in this court that it was tried in the lower court. [4 C. J. 701; Bammert v. Kenefick, 261 S. W. 78, 82.] The theory of defendant at the trial, as shown by the objections and statement of counsel at the trial and the instructions offered by defendant, was that the shortage of the goods occurred between the time they were shipped by defendant back to plaintiffs and the time they reached plaintiffs, and that as soon as the goods were accepted back by plaintiffs in Philadelphia, the title to them was again vested in plaintiffs as of the date and time of the shipment at Kansas City. The record fairly shows that the court adopted the theory of defendant at the trial as to what was involved but differed with her counsel as to the law applicable to the situation. Having misled the court as to what was involved she is now in no position to complain on other grounds that the court erred in overruling her demurrer. [Lee v. Hassett, 39 Mo. App. 67, 70; White v. Mfg. Co., 53 Mo. App. 337; Lafayette Building Ass'n v. Kleinhoffer, 40 Mo. App. 388.] The case is not briefed on the theory in this court upon which it was tried below but defendant complains of a number of errors which she contends were committed by the trial court and advances a number of propositions of law in support of her points raised, but nowhere does she attempt to defend the position taken by her through her counsel at the trial. We think that position was indefensible. At the trial defendant assumed the position that there was a sale and delivery of the goods to defendant; that when they arrived she rescinded the contract of sale and that this rescission was not based upon her ''rescission'' of June or July, but that she arbitrarily undertook to rescind the contract at the time the goods arrived and were shipped back to plaintiffs, and did rescind it as of that time. We think that the action of the trial court in overruling the demurrer to the evidence and refusing defendant's instructions was right in view of the theory upon which the case was tried.

It was stated in Klein v. Rector, 57 Miss. 538, 543, 544—''When parties agree to rescind a sale once made and perfected, the same formalities of delivery and acceptance are necessary to revest the property in the original vendor which were necessary to pass it in the first instance from him to the vendee.''

See, also, Quincy v. Tilton, 5 Me. 277, 278, where the court said: ''. . . when the sale or exchange is fairly and honestly made and perfected by delivery, the property is completely changed in the articles which are the subject of the sale or exchange; and if, after

this, the parties agree to give up the bargain, as it is often expressed, and place things as they stood before it was made, this object can only be affected by what, in legal contemplation, amounts to a re-sale or re-exchange; and whatever was necessary to constitute the original sale or exchange is equally necessary to constitute a legal re-sale or re-exchange.''

When defendant sought to rescind the contract of sale she did not base it upon the notice of cancellation that she gave to plaintiffs on June 25 before the goods were shipped, if she did in fact give such notice, and there was at least a conflict in the evidence on this point, but she arbitrarily attempted to effect a rescission when she shipped the goods back, which, of course, she could not do without the mutual consent of the parties. [35 Cyc. 127.] (It is unnecessary for us to go into the question as to whether the sale could mutually have been rescinded at that time without a consideration moving to plaintiffs as plaintiffs are bringing suit on the theory that a partial rescission was made.) Plaintiffs did not agree to any rescission until they received a part of the goods back and there is no direct evidence that they so agreed even then but they must be held to have agreed to rescind, at least as to the goods returned and received by them, in view of their conduct in receiving them back unconditionally and bringing this suit. Under such circumstances there was no rescission of the contract either in part or in whole until there was delivery to and acceptance of the goods by plaintiffs and, therefore, there was no rescission even as to the goods received back until plaintiffs actually received them, and no title vested in plaintiffs to any part of the goods until that time arrived. Until that time defendant would have had the right to dispose of the goods as she saw fit and they would have been subject to the claims of her creditors. [Quincy v. Tilson, supra; Klein v. Rector, supra.] There seems no question but that the railroad which carried the goods back to Philadelphia was the agent of the defendant and the burden was upon defendant to show the amount of goods that was delivered back to the plaintiffs in Philadelphia. [Rose v. Rubeling, 24 Mo. App. 369, 371, 372.] Defendant failing to show this, there was nothing to submit to the jury except the question as to whether there was in fact any shortage, as stated by defendant's counsel at the trial.

It is insisted, however, that the allegations contained in the statement constitute no cause of action. In support of this contention defendant argues that ''the petition and evidence show that respondents seek both to rescind the contract and to recover thereunder; assuming for the purpose of the argument, that there was a contract existing. They cannot blow hot and cold. This was not a severable contract. They sold all these goods as one lot, or attempted to do so. Protesting against the *wrongful* return of the goods, they nevertheless accepted them; not as the goods of the appellant, to resell for her account, but

as their own." That plaintiffs could not recover the invoice price of the goods but, if at all, for the reasonable value of the goods alleged to have been kept by defendant.

The cause arose in a justice court where technical pleading is not required but even treating the statement as intended to be formal, there was no attack made upon it at the trial and, therefore, it must be liberally construed. Viewing it from that light, we think it does not plead a rescission of the entire contract but pleads facts, and inferences that may be drawn therefrom, showing what actually occurred. If defendant returned a part of the goods and kept the balance and plaintiffs accepted the goods returned, there was no rescission of the contract as to the goods not returned. [35 Cyc. 130; Whiting Mfg. Co. v. Gephart, 6 Wash. 615; Coyle v. Smith and Baum, 3 Okla. 695.] Whether or not the statement discloses that the contract originally was a severable contract, is not important for the reason that if it was not, there was nothing to prevent the parties from treating it as such. [35 Cyc. 118.] Plaintiffs, then, had the right to sue upon the contract and treat it as not rescinded as to the goods not returned and to recover the contract price of those kept.

It is insisted that the demurrer should have been sustained on account of the fact that plaintiffs failed to make a case under the Statute of Frauds. The Statute of Frauds was not relied upon by defendant at the trial as she admitted that there had been a sale and delivery of the goods to her.

Complaint is made of the admission of the letters introduced in evidence but this complaint is not based upon the objection to them made at the trial. [Bragg v. Ry. Co., 192 Mo. 331.] There the objection was that they were not admissible because the only "question in issue is the shortage" and they had no bearing on the "contract," whatever that may mean. The objection now seems to be based on the fact that they were "unidentified" and that one of them was prejudicial because it "read the appellant a lecture" and another was not the best evidence.

It is insisted that the evidence shows that delivery to the Philadelphia & Reading Railroad was not in compliance with defendant's direction to ship "via Lehigh Valley, Clover Leaf, Rock Island thru car." The shipping order introduced in evidence shows that the goods were to be shipped in the manner contended for by defendant. However, the case was not tried upon any theory that made this matter material. Defendant now contends that plaintiffs should have shown where the shortage in the shipment occurred but it was admitted at the trial that the defendant was responsible if the shortage occurred while the goods were in transit to Kansas City, and, substantially, if it occurred at any time except while the goods were in transit back to plaintiffs. As we have held that defendant was responsible if it occurred in the manner last mentioned, it is apparent

that there is no merit in this contention. The alleged error in connection with claimed improper remarks of the court in the presence of the jury, was not preserved in the motion for a new trial. There are a number of other errors complained of but these are based upon a theory entirely different from that upon which the case was tried. It is contended that the court directed a verdict for plaintiffs but the record shows to the contrary.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.