JOHN McFALL AND LOUISA McFALL, Respondents, v. D. J. DEMPSEY *et al.*, Appellants.

43 369
59 292

St. Louis Court of Appeals, January 27, 1891.

1. **Res Adjudicata**: PRINCIPAL AND SURETY: MECHANICS' LIENS. If a proceeding under the mechanics' lien law results in a judgment establishing the lien before a tribunal or magistrate having jurisdiction, the contractor being a party thereto, such judgment is conclusive as between the owner of the premises and the contractor, notwithstanding irregularities in the proceedings; and such judgment is also equally conclusive against the sureties in a bond, given by the contractor to such owner, and conditioned that the contractor would perform his contract, which bound him to pay laborers and materialmen, and would indemnify the owner against mechanics' liens.

2. **Mechanics' Liens**: EVIDENCE OF PAYMENT. If an original contractor gives to the subcontractor an order for the payment of money upon the owner of the premises, the possession of such order by the owner is presumptive evidence that he has paid it.

3. ————: INTEREST. The owner of premises paid judgments establishing mechanics' liens on the premises and conclusive upon the contractor and his sureties. *Held* that the owner was entitled to interest on the amount thus paid from the date of judgment.

*Appeal from the St. Louis City Circuit Conrt.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Lubke & Muench* and *H. A. Loevy*, for appellants.

*T. J. Rowe*, for respondents.

BIGGS, J.—D. J. and William Dempsey entered into a contract with the plaintiffs, in which they agreed to furnish at their own expense all the materials and labor necessary for the construction of a certain building, to be erected on a lot in the city of St. Louis belonging to Louisa McFall, the wife of John McFall. In consideration of this the plaintiffs agreed to pay Dempsey Bros. the sum of $5,500, to be paid in certain installments, and during the progress and at certain stages of the work ; provided the contractors paid the wages of the artisans and laborers, and the bills of materialmen who might furnish material for the construction of the building. And it was further provided that, if the Dempseys should fail to pay any such claim or claims, then the plaintiff should have authority under the contract to pay them, and charge the payments to the contractors. To secure the plaintiffs in the completion of this contract according to its terms the Dempsey Bros., as principals, and John Nolan and Luke McLaughlin, as their sureties, entered into a bond to the plaintiffs in the penal sum of $6,000. The conditions of this bond are as follows : "The condition of the above obligation is such, that, whereas the said Dempsey & Bro. have, on the day of the date of these presents, executed and entered into a certain contract for the erection of certain buildings in said contract described, which contract is hereto annexed : Now, if the said Dempsey & Bro. shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said John McFall and L. S. McFall harmless and indemnified from and against all and every claim, demand, judgment liens, and mechanics' liens, costs and fees of every description incurred in suits or otherwise, that may be had against them, or against the building to be erected under said contract, and shall repay the said John McFall and L. S. McFall all sums of money which they,

McFall v. Dempsey.

or either of them, may pay to other persons on account of work and labor done or materials furnished on or for said building; and if the said Dempsey & Bro. shall pay to the said L. S. McFall and John McFall all damages they, or either of them, may sustain, and all forfeitures to which they may be entitled by reason of the non-performance or malperformance on the part of said Dempsey & Bro. of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void ; otherwise the same shall remain in full force and virtue."

The present action is brought against all the obligors in the bond, and among other alleged breaches plaintiffs claimed that, in the construction of the building, the Huttig Sash & Door Company, had furnished the contractors with certain materials which had been used in the construction of the building ; that the contractors had failed to pay this claim ; that a mechanics' lien therefor had been filed in the proper office ; that an action had been brought thereon before a justice of the peace, in which the contractors and the plaintiffs were made parties ; that judgment for the amount was rendered against the contractors; that the amount of this judgment was declared a lien upon the house and lot of Louisa McFall ; and that afterwards, on the seventeenth day of July, 1887, the plaintiffs paid and satisfied the amount of the judgment. Four other like breaches were declared on, in one of which the judgment was rendered before a justice of the peace, and in the others the suits for the enforcement of the mechanics' lien were begun, and the judgments thereon rendered in the circuit court. Other breaches of the bond were alleged, but it will not be necessary to notice them. The contractors filed an answer in which they denied the plaintiffs' cause of action, and set up certain alleged counter claims for extra work for which they claimed a judgment. Nolan and McLaughlin, the sureties, after a general denial, set up in their answer that the building

contract had been materially altered without their con-
sent, and that, by reason of this, they were released
from the bond. The case was sent to a referee who
took and reported the testimony together with his find-
ings to the circuit court. Exceptions (almost without
number) to the referee's report were filed by the
defendants. In the opinion of the referee the defend-
ants were not entitled, under the pleadings and evi-
dence, to have the balance of the contract price
deducted from the amounts of the various judgments
paid by the plaintiffs. The circuit court was of a differ-
ent opinion, and modified the finding of the referee by
deducting therefrom the amount of such balance. The
judgment of the circuit court was for the sum of $493.47.
The defendants have appealed.

To sustain the averments touching the payments of
the four judgments against the property, the plaintiffs
read in evidence the mechanics' liens, the notices of
the liens, the pleadings in each case, the writs of sum-
mons and the judgments of the courts thereon. It
appeared in each case that the plaintiffs and the Demp-
seys were in court and made defense to the various
suits. The defendants complain of the introduction of
this evidence, and urge its incompetency and insuffi-
ciency to establish valid judgments as against them owing
to various and divers irregularities in the proceedings
leading up to the judgments. This assignment of error
is predicated upon the legal assumption, that the judg-
ments in those cases are not even *prima facie* evidence
against the defendants in this action. Upon what
principle this can be maintained as to the Dempseys,
we are at a loss to know or even conjecture. They
were personally served with process; they appeared and
defended the suits as they were in duty bound to do
(R. S. 1889, sec. 6725); personal judgments in each
case were rendered against them; the courts in each
case found that the materials had been used in the con-
struction of the plaintiffs' building, and liens for the

McFall v. Dempsey.

several amounts were declared therefor. These judg-
ments were unappealed and unsatisfied by the con-
tractors, but they were afterwards paid by the plaintiffs.
To hold that the contractors are not completely and effect-
ually bound and estopped by the judgments in those
cases, in so far as the plaintiffs are concerned, would, in
our opinion, be clearly untenable. *Krey v. Hussmann*,
21 Mo. App. 343. If there were any irregularities in the
proceedings, or if the petition for the enforcement of
the liens failed to allege jurisdictional facts, as now
claimed, the statute made it the duty of the contractors
to make such defenses for the protection of the plain-
tiffs' property. Having failed to do so, they will not be
permitted to urge any such irregularities or defects in
the proceedings as a defense to this action. It is not
pretended that the justices of the peace did not have
authority to hear and determine the cases brought
before them. The record shows that there were notices
given, as required by the law, that these suits would be
begun before the respective justices; in which feature
this case is essentially different from the case of *Ewing
v. Donnelly*, 20 Mo. App. 6. If the suits had been
instituted without such notices, then the judgments
would have been nullities for the want of jurisdiction
of the subject-matter. When a court has jurisdiction
to hear a cause, and there is personal service or appear-
ance by the defendants, no error, mistake or irregularity
in the proceedings can be shown collaterally for the
purpose of impeaching the judgment. 1 Herman on
Estoppel and Res Judicata, p. 674. The fact, that
the statements were defective, could have been taken
advantage of by the parties to the judgments by appeal,
or possibly even by motion to quash an execution, as
they were irregularities affecting the proceedings; but
the judgments were not open to collateral attack by the
parties thereto, on account of any defects or irregular-
ities. That the Dempseys are bound in the present
action by these judgments cannot be questioned.

Do their securities occupy any better position? We find this general rule stated in Brandt in his work on suretyship, section 91: "If the effect of the obligation of the surety is that he shall be bound by the result of litigation between other parties, he is, in the absence of fraud and collusion, concluded by such result." It is by this rule that sureties on injunction bonds, bail bonds or appeal bonds, are held concluded by the results of the suits in which such bonds are given. We can see no reason why the same rule is not applicable in this case. The conditions of the obligation assumed by Nolan and McLaughlin were that Dempsey Bros. would pay all claims for labor and materials necessary for the construction of the building, and would protect the plaintiffs' property against all judgment liens, or mechanics' liens, and that, if the principals failed, the sureties would be liable. This contract or obligation necessarily contemplated that litigation might arise or grow out of the enforcement of such claims or mechanics' liens connected with the building of the house. It was not possible for Nolan and McLaughlin to become parties to any such litigation, or to, in any way, control the same. In this respect their position was, in no way, different from that occupied by a surety in a bail bond in a criminal case or a surety in an appeal bond in a civil case. Therefore, a fair construction of the undertaking leads us to the conclusion that Nolan and McLaughlin assumed the responsibility and results of a contestation of such suit by their principals, and, so far as the force or effect of the judgments is concerned, Nolan and McLaughlin must occupy the shoes of the Dempsey Bros. *Picot v. Signiago*, 27 Mo. 125; *Fay v. Ames*, 44 Barb. 327; *Riddle v. Baker*, 13 Cal. 295; *Keane v. Fisher*, 10 La. Ann. 261; *Spratlin v. Hudspeth*, Dudley's Rep. (Ga.) 155; *Parkhurst v. Sumner*, 23 Vt. 538. To hold otherwise would take away from the plaintiffs that measure of indemnity which was manifestly intended by the giving of the bond. If the

regularity of the proceedings, anterior to the judgments, is open to collateral attack, as now claimed by the defendants, how and under what circumstances would the plaintiffs have been justified and protected in the payment? Was it their duty to appeal the cases and take the opinion, of the court of last resort? Even if that had been done, and the appellate courts had affirmed the judgments, the judgments would not, under the theory of the defendants, have been conclusive against them. But, as we have shown, the law imposed on the Dempseys the duty of defending these suits. We will have to rule all assignments and exceptions, based on the finding of the trial court in respect of these judgments, adversely to the defendants.

The court found that the plaintiffs had paid the contractors by checks the sum of $3,800. Concerning this there is no dispute. The plaintiffs claimed that, in addition to this amount, they paid to subcontractors, on orders from the contractors, the sum of $1,047.50. The plaintiffs had in their possession, and produced at the trial, the various orders, which were identified by one of the contractors as genuine. There were receipts or acknowledgments of payment attached to each order, but the signatures of the payees were not established by proof. Mrs. McFall testified in a general way that she had paid various orders in favor of subcontractors, which were then in the hands of her attorney, but she was not asked to identify the particular orders, or to testify specifically as to their payment. It is now contended by the defendants that this evidence was insufficient to establish the payment of the orders, and that the credit given the plaintiffs therefor cannot be sustained. We will have to rule this assignment against the defendants. While the testimony as to the payment of the orders might have been more explicit and satisfactory, yet there is no failure of proof on this point. The possession of the orders by the plaintiffs is presumptive evidence of their payment.

The next contention is that the installments of the contract price were not paid, either in time or in amount, in accordance with the terms of the contract, and that this released the sureties from their obligation. This assignment will have to be decided against the defendants for various reasons. The contract provided that, when the house was ready for the plastering, the contractors should be paid the sum of $1,000. The defendants say that only $800 were paid. The contract also provided that the house was to be completed by the first day of October, and the evidence shows that it was not ready for the plastering until the fourth day of October. It is thus made to appear that, at the time of the alleged breach of the contract by the plaintiffs, the contractors themselves were in default. Besides under the building contract the plaintiffs had the right to retain in their hands a sufficient amount of the various installments to pay the wages of mechanics and laborers, and claims of materialmen. There is nothing in the record to show that, at the time the $800 were paid, all such claims had been settled, but on the contrary the evidence shows that the contractors had given a materialman an order on the plaintiffs for $130 which was outstanding and unpaid.

The court, in making up its judgment, allowed interest on each of the payments on account of the judgments, from the date of the payment to the sheriff and constables. The contention is that interest on the plaintiffs' demands could only run from the date of the demand, or, in the absence of evidence of any demand as in this case, from the date of the institution of the suit. This assignment is based on the assumption, that the judgments were void, and that the payments by the plaintiffs were voluntary. We have shown that the defendants are wrong on both propositions. The defendants contracted with the plaintiffs in writing that they would pay any and all such judgments. They failed to do so, and the plaintiffs, in order to relieve their

property from the liens of the judgments, were compelled to do what the defendants had contracted to do. We know of no law that would withhold from the plaintiffs full compensation. This would necessarily include interest from the day of payment.

The point is also made that this action cannot be maintained jointly by the plaintiffs, as joint obligees, because the evidence shows that the husband paid none of the money in discharge of the judgments, and that, for this reason, the bond as to him was without consideration. There is no merit in this. The contract showed that the land upon which the house was to be constructed belonged to Mrs. McFall. Her husband had such an interest in it, as entitled him to become a co-obligee in the bond of indemnity. Whether Mrs. McFall or her husband paid the money to relieve the property from the judgments, could make no possible difference to the defendants; nor was it any concern of theirs that a joint judgment was rendered in this action in favor of both husband and wife. We must confess that we have been unable to understand or fully comprehend the force of the argument made in support of this assignment.

We have gone through this record with considerable care and we have found no error which in our opinion would justify a reversal of the judgment. With the concurrence of the other judges, the judgment will be affirmed.