PLYMOUTH CORDAGE COMPANY, Appellant, v. JOE D. YEARGAIN, Respondent.

St. Louis Court of Appeals, March 4, 1901.

1. **Assumpsit:** COUNTERCLAIM: VERDICT AGAINST WEIGHT OF EVIDENCE. The jury found the issues in favor of defendant on his counterclaim, and assessed his damages at $100; and plain-

Vol 87 app—36

Plymouth Cordage Co. v. Yeargain.

tiff assigned as error that the verdict was against the weight of the evidence. *Held,* that that may be true, and yet not be a ground for reversal.

2. ———: ———: VERDICT SUFFICIENT. No doubt can arise from the verdict that the jury intended to find against plaintiff and for the defendant. Verdicts do not have to be in any particular form; they are required, however, to be certain and respond to all the issues; and the verdict rendered in this behalf met the requirements, and is sufficient.

Appeal from McDonald Circuit Court.—*Hon. Henry Clay Pepper,* Judge.

AFFIRMED.

*James M. Sutherland* for appellant.

(1) That the only issue presented upon the allegations of the petition was left undisposed of, as the verdict of the jury and the judgment thereon entered only disposed of the issues raised upon the counterclaim. (2) The verdict is contrary to and against the weight of the evidence.

BLAND, P. J.—On February 12, 1898, the defendant gave to plaintiff the following written order:

"Southwest City, Mo., 2-12, 1898 (290).

"Plymouth Cordage Company, North Plymouth, Mass.:

"I hereby purchase from you the binding twine described below, which please ship me on or before as ordered, 189—, via St. L. and S. F. and K. C. P. and G. R. R., viz.:

"No. bales 834. Bales 60 lbs. ea. Total pounds, 50,040. Plymouth Sisal, — (s), at 5 60-100 cts. per lb., net.

"In event of failure of crop, this order may be reduced to meet the requirements of prospective trade.

"Deliver at Noel, Mo., for which I agree to pay Plymouth Cordage Company, cash, May 1, 1898, 4 per cent discount.

Plymouth Cordage Co. v. Yeargain.

"Further agree to purchase from you all additional sup-
plies of twine needed, at prices to be mutually agreed upon,
and in the absence of such mutual agreement will settle for all
additional supplies ordered from you during the season at your
ruling market rates at time order is received by you. Any
goods furnished under this agreement, and not settled for by
cash or note as above specified, shall be subject to sight draft
at any time after the days for payment above specified. The
sale of the within named twine is made subject to contingencies
arising from strikes, destruction of stock or factory, or other
causes beyond the control of the seller.

"Joe D. Yeargain.

"Approved Feb. 23, 1898."

Which was duly received and approved by plaintiff on the
following day.

On April 27, 1898, plaintiff shipped to defendant one car-
load of twine of 417 bales said to weigh 25,020 pounds. On
May 26, 1898, the plaintiff shipped to defendant a second car-
load of 417 bales said to weigh 25,020 pounds at the contract
price of 5.60 cents per pound. The value of these shipments
was $2,802.25. Defendant received the two shipments and
paid thereon (including freight charges of $162.05),
$2,647.68, leaving a balance of $154.56, to recover which this
suit was brought.

The answer alleged that defendant received but 47,280
pounds of twine and for a counterclaim alleged that plaintiff
failed to comply with its contract to ship defendant 50,000
pounds as it had agreed to, by reason whereof defendant was
damaged in the sum of $270 for which he asked judgment.
The verdict of the jury is as follows: "We the jury find the
issues in favor of the defendant on the counterclaim and assess
his damages at one hundred dollars." Judgment was rendered
on the verdict, that "defendant recover of and from plaintiff the

sum of one hundred dollars and costs." Plaintiff appealed.

Plaintiff's evidence is that at Plymouth, Massachusetts, on April 15, 1895, it loaded into a car (No. 68,241), four hundred bales of twine, and consigned it to its agents in St. Louis, Missouri. The car arrived in St. Louis in good condition with the seals intact. Plaintiff's agents opened the car at St. Louis, put into it seventeen more bales of twine, had it sealed and consigned to defendant at Southwest City, where it arrived in good condition with seals unbroken and was received and unloaded by the defendant. In respect to the second shipment, the evidence is that it was also loaded at Plymouth with four hundred bales of twine and consigned to plaintiff's agents at St. Louis. This car also arrived in St. Louis in good condition with the seals unbroken. At St. Louis it was opened and seventeen additional bales were put into it, when it was sealed and consigned to defendant. This car arrived at its destination in good condition and with the seals unbroken and was received and unloaded by the defendant.

The defendant's evidence is that he got but seven hundred and eighty-eight bales of twine out of the two cars. The cars were unloaded at Southwest City. The defendant's place of business is at Noel on the opposite side of Cowskin river from Southwest City. Most of the twine was hauled from the cars to the defendant's place of business. The defendant counted the bales as they were unloaded by the teamsters and arrived at the total number by adding the number hauled to his store by wagon to the number he sold and delivered direct from the cars at Southwest City. While the last car was standing on the sidetrack at Southwest City the river became unfordable for a day or so, and the car was eight or ten days on the track before all the twine was taken out, but was kept locked until the last bale was removed. Defendant testified that the twine, at the time of delivery, was worth double what he agreed to pay

for it. His evidence shows a shortage of forty-six bales, and as the bales weighed sixty pounds each, there was then a shortage of 2,860 pounds, according to the count kept by the defendant. This shortage, under the evidence, would entitle him to recover on his counterclaim a sum in excess of the amount awarded him by the jury. One of the assignments of error is that the verdict is against the weight of the evidence; this may be true, but it furnishes no ground for reversal. Chouquette v. Ry. Co., 152 Mo. 257; Hays v. Merkle, 78 Mo. App. 383; Huth v. Dale, 76 Mo. App. 671; Tower v. Paul, 76 Mo. App. 287; Parsons v. Mayfield, 73 Mo. App. 309.

The giving and the refusal to give instructions is assigned as error. In what the error complained of consists is not stated or pointed out. Those given are consistent with each other and correctly stated the law of the case; those refused are hypothecated on the theory that under the contract, the twine was delivered when locked into the cars at St. Louis. Southwest City is named as the place of delivery by the contract and the instructions were properly refused.

One of the grounds assigned in the motion in arrest of judgment is that the verdict is not responsive to the issues made by the pleadings. The overruling of this motion is assigned as error. The contention is, the allegations of the petition are not disposed of by the verdict. The verdict does not in terms find against the plaintiff's cause of action, but does so find by necessary implication. Taylor v. Short, 38 Mo. App. 21; Hackworth v. Zeitinger, 48 Mo. App. 32; Pope v. Ramsey, 78 Mo. App. 157. No doubt can arise from the verdict that the jury intended to find against the plaintiff and for the defendant. Verdicts are not required to be in any particular form; they are required to be certain and respond to all the issues. When these requirements are met, the verdict is sufficient, however informal or crude may be the language in

which the verdict is couched.     The Provo Mfg. Co. v. Sever-
ance, 57 Mo. App. 260.

Discovering no reversible error in the record the judg-
ment is affirmed.     All concur.