## W. B. NOWELL, Respondent, v. BENJAMIN F. MODE et al., Appellants.

### Kansas City Court of Appeals, May 25, 1908.

1. **TRIAL PRACTICE: Pleading: Demurrer: Verdict.** There is a distinction between a petition which defectively states a cause of action and one which states no cause of action at all. The former is good after verdict.

2. ———: ———: ———: ———: **Construction: Builder's Bond.** A builder's bond and contract is held to be more than a mere obligation of indemnity, since they undertook to deliver a completed building in a specified time and hold the owner harmless for pecuniary loss for lienable demands; and the allegation of the breach of this obligation is held sufficient, since the pleading should be liberally construed in favor of the pleader and the facts constitutive of the cause of action may be deduced by fair and reasonable intendment from the facts stated.

3. ———: ———: **Counterclaim: Verdict.** A counterclaim is a new and independent cause injected into the action by the defendant and the verdict must respond to the issues presented by the pleadings, and failing to dispose of the counterclaim may be attacked as not responsive to the issues, but the counterclaim need not be specially mentioned in the verdict if from the whole record the conclusion is irresistible that the jury considered and determined the issues raised thereby.

Nowell v. Mode.

4. **PRINCIPAL AND SURETY: Builder's Bond: Alteration of Contract: Construction.** The rules for construing a contract of surety should not be confounded with the rule that sureties are favorites of the law, but it is the intention of the parties as disclosed by the instrument read in the light of surrounding circumstances that should control.

5. ———: ———: ———: ———: **Changes: Errors.** A builder's contract is construed and held to mean that where the owner desires · changes in the plans it was necessary to get the architect to issue a written order to the contractor for the change; but changes in drawings and specifications rendered necessary because of technical errors or omissions of the architect could be corrected without written order on mere oral directions; and this is applied to the changing of the location of a stairway.

6. ———: ———: ———: ———: ———: Certain objections to the introduction of evidence and other matters are summarily disposed of.

Appeal from Boone Circuit Court.—*Hon. Samuel C. Davis,* Special Judge.

*H. D. Murry* and *F. G. Harris* for appellant Mode; *E. W. Hinton* and *Thos. H. Sprinkle* for appellant, The Title Guaranty & Trust Co.

(1) It is an elementary rule of pleading that in an action on a bond a breach of the condition must be assigned, for without a breach there is no cause of action. Barret v. Fletcher, Cro. Jac. 220; Holman v. Criswell, 13 Tex. 38; Moxley v. Moxley, 2 Met. (Ky.) 309; Schuyler v. Chittenden, 47 Mo. 65. (2) It is equally elementary that the breach must be assigned in the words of the covenant, or in words which are co-extensive with the import and effect of it—that is, the defendant must be charged with some act or omission which in law amounts to a breach of the condition. Moxley v. Moxley, 2 Met. (Ky.) 309; Pomeroy v. Bruce, 13 Serg. & Rawle 186; Schuyler v. Chittenden, 47 Mo. 65. (3) The verdict in this case is not responsive to the issues because it does not make any finding on the

counterclaim of the defendant Mode, and for that reason the motion in arrest of judgment should have been sustained.    Winkelman v. Maddox, 119 Mo. App. 658; Marshall v. Armstrong, 105 Mo. App. 234; Henderson v. Davis, 74 Mo. App. 5.    (4)    The court should have sustained the demurrer of the defendant surety company at the close of the whole case because it was discharged by the changes made in the stairway without its consent, and which were not specified in writing as required by the terms of the building contract.    Beers v. Wolf, 116 Mo. 179; Chapman v. Eneberg, 95 Mo. App. 127; Burns v. Fidelity Co., 96 Mo. App. 467; Lumber Co. v. Calhoun, 89 Mo. App. 205.    (5)    And this defense was open to the surety on demurrer though not specially pleaded because the facts appeared without dispute from the plaintiff's evidence.    Hudson v. Railroad, 101 Mo. 30; Kersting v. White, 107 Mo. App. 265.

*Charles J. Walker* and *A. W. Walker* for respondent.

(1)    The petition clearly charges the breaches of the bond complained of.    The condition of the bond is not only to indemnify but also to "save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms of the contract on the part of the principal."    (2)    "Indemnify" is not the equivalent of the term "save harmless from pecuniary loss."    The moment the plaintiff "was compelled to pay and did pay," as alleged, the judgments against the property, the defendant had violated his bond and contract by failing to save plaintiff harmless from pecuniary loss.    (3)    Likewise, when said defendant "did not complete said building according to contract by the first day of October, 1904," as alleged, he failed to save plaintiff harmless from pecuniary loss.    The petition is sufficient.    Hirt v. Hahn, 61 Mo. 496; State ex rel. v. Williams, 77 Mo. 463; Bank v. Leyser, 116 Mo.

Nowell v. Mode.

51; State ex rel. v. Pace, 34 Mo. App. 458; Corpenny
v. Sedalia, 57 Mo. 88; Munchow v. Munchow, 96 Mo.
App. 553; Thomasson v. Insurance Co., 114 Mo. App.
109.    (4)   Defendants' objection to the introduction
of evidence at the trial does not take the place of a de-
murrer to the petition.    McKinney v. Northcutt, 114
Mo. App. 160.    (5)   The verdict in this case is suffi-
cient.   It responded directly to the issues, as sumbitted
to the jury by the instructions of the court.    Lumber
Co. v. Mills, 64 Mo. App. 626.    (6)   The statute does
not require the jury to make an affirmative finding
on the defendant's counterclaim.    R. S. 1899, sec. 726;
Saddlery Co. v. Bullock, 86 Mo. App. 89; Cordage Co.
v. Yeargain, 87 Mo. App. 561; Hackworth v. Zeitinger,
48 Mo. App. 32; Taylor v. Short, 38 Mo. App. 21; Jones
v. Railroad, 89 Mo. App. 653.    (7)   Furthermore, any
objections to the regularity of the verdict should have
been made at the trial, when the verdict was returned,
so that, if insufficient, it might have been then cor-
rected.    This was not done.    Grier v. Strother, 111
Mo. App. 393.    (8)   If defendants desired to have par-
ticular findings on the several items of the counterclaim,
they should have asked an instruction with an appro-
priate form of verdict requesting such particular find-
ings.    Lumber Co. v. Miller, 64 Mo. App. 626; McClary
v. Railroad, 99 Mo. App. 522; Sonnen v. Transit Co.,
102 Mo. App. 274.    (9)   The circuit court correctly
ruled that the change in the stairway being necessitated
by an error in the drawings did not constitute an alter-
ation or modification of the contract.    As the contract
clearly contemplated the correction of any errors dis-
covered, the change in the stairway constituted no al-
teration or modification, and the surety cannot be dis-
charged on account thereof.    Leavel v. Porter, 52 Mo.
App. 642; Burnes Est. v. Fidelity Deposit Co., 96 Mo.
App. 467; Bagwell v. American Surety Co., 102 Mo.
App. 707.    (10)   The judgments establishing liens for

material and labor against the building were competent evidence against the principal and the surety.    Oberbeck v. Mayer, 59 Mo. App. 289; McFall v. Dempsey, 43 Mo. App. 369; Building Assn. v. Kleinhoffer, 40 Mo. App. 388; Casey v. Gunn, 29 Mo. App. 14; Leavel v. Porter, 52 Mo. App. 632.

JOHNSON, J.—Defendant Mode contracted to erect a building on premises owned by plaintiff in the city of Columbia for the price of $12,850, and executed and delivered to plaintiff a bond in the penal sum of $5,000 for the performance of the contract.    This action was brought on the bond by the obligee against Mode, the principal obligor, and the Title Guaranty and Trust Company of Scranton, Pennsylvania, surety, to recover damages alleged to have been sustained by plaintiff in consequence of certain breaches of the obligation. Verdict and judgment were for plaintiff in the sum of $1,000, and defendants appealed.

First, defendants insist that the petition fails to state a cause of action for the reason that a breach of the bond is not alleged.    They argue that the undertaking was one of indemnity and that to constitute a cause of action thereon, it was incumbent on plaintiff to plead and prove that Mode (the contractor) "broke the building contract in some one or more particulars; that Nowell (the owner) suffered pecuniary loss therefrom and that Mode failed to indemnify him for such loss."    This objection was not made the subject of a demurrer to the petition but defendants answered to the merits and first raised the point during the progress of the trial.    In such situation, the question for us to decide is whether the petition omits to state one or more of the essential elements of the cause of action intended to be asserted.    However loose or defective the statement of some of the elemental facts may be, objection to such defects must be raised by demurrer to the petition

and if not thus raised, should be held to be cured by
verdict.　The rule is well expressed by the St. Louis
Court of Appeals in Thomason v. Insurance Co., 114
Mo. App. 109, where it is said: "There is a marked
distinction in our practice between a petition which
defectively states a cause of action and one which states
no cause of action at all.　A defective cause of action
is one thing and a defectively stated cause of action is
another.　A petition stating a cause of action defec-
tively is good after judgment."　[Citing Malone v. In-
surance Co., 71 Mo. App. 1; Edmondson v. Phillips, 73
Mo. 59; State ex rel. v. Rush, 77 Mo. 586; Bank v. Ley-
ser, 116 Mo. 51.]

　　After referring to the contract between Nowell and
Mode for the construction of the building, the bond thus
states the obligation assumed by the obligors: "Now,
therefore, the condition of the foregoing obligation is
such that if the said principal shall well and truly in-
demnify and save harmless the said obligee from any
pecuniary loss resulting from the breach of any of the
terms, covenants and conditions of the said contract
on the part of the said principal to be performed, then
this obligation shall be void; otherwise to remain in
full force and effect."　The building contract required
defendant Mode to construct the building in accord-
ance with plans and specifications prepared by the su-
perintending architect and to complete the work on or
before October 1, 1904.　It provided "that the said party
of the second part (the contractor) shall forfeit the sum
of $20 liquidated damages for every day expiring after
that day before the completion and delivery of said
building as aforesaid to the said party of the first part,
and this condition not to be made or rendered void by
any alteration or additional work being performed, but
in such case the time shall be extended as shall be
deemed proper by the architect and agreed to by the
said party of the second part, at the time of such exten-

Nowell v. Mode.

sion." . Terms of payment of the contract price then were stated, followed by this stipulation: "Provided . that the wages of the artisans and laborers, and all those employed by, or furnishing materials to the said party of the second part, shall have been paid and satisfied, so that they shall have no lien upon the building or works, and in case the said party of the second part shall fail to pay and satisfy all and every claim against said building as aforesaid, the said party of the first part may, if he deems proper so to do, retain from the moneys due and coming to the said party of the second part, enough to pay and satisfy such claims and demands, it being, however, understood that nothing herein contained shall in any way be construed as impairing the right of the said party of the first part to hold the said party of the second part, or securities, liable on his bond for any breach of the conditions of the same."

It is alleged in the petition that the contractor did not complete the building by October 1, 1904, or at any time thereafter, but left it unfinished and that on December 18, 1904, plaintiff took possession of the premises and was compelled to finish the building at his own expense. Then follows a detailed statement of various mechanics' liens filed against the property for labor and materials furnished for the building under contracts with defendant, and the allegations that plaintiff was compelled to pay these judgments, together with court costs amounting in all to $3,069.04, and "that under the provisions of said builders' contract he retained the final payment of $2,350, which was payable to the said defendant, Benjamin F. Mode; and applied said amount on the payment of the above-mentioned judgments; . . . that none of the breaches of said contract by the defendant above mentioned were occasioned by an act of God, or public enemies or mobs, or riots, or civil commotion or by employees leaving the work being done on said contract on account of socalled

strikes or labor difficulties. . . . that by reason of the delay in completing said building by the first day of October, 1904, as required by the provisions of the said contract, he is entitled to the sum of $1,560, as liquidated damages, and that by reason of the fact that the defendant, Benjamin F. Mode, failed to construct and finish said building in the manner and according to the plans and specifications provided therefor, the plaintiff is damaged in the sum of $500; that by reason of the pecuniary losses resulting to the plaintiff from his being compelled to pay the aforesaid judgments and other claims against said building and premises, court costs and attorney's fees incurred in connection therewith, and interest on sums expended, the plaintiff is damaged in the sum of $1,000."

The answer of the defendant Mode contained a series of denials, a plea that the delay was caused by alterations and changes and by delay on the plaintiff's part in removing old buildings from the lot and a counterclaim for extra work. The answer of the surety company was a general denial, a plea that the delay was caused by plaintiff's improper conduct and a further plea that the liquidated damages sought to be recovered were unreasonable and excessive and amounted to a penalty.

Though we find no specific allegation that defendant Mode failed to reimburse plaintiff for his damages and outlay on account of mechanics' liens, we think that fact fairly is inferable from those pleaded. The obligation of defendants was more than a mere contract of indemnity. They undertook affirmatively to deliver to plaintiff a completed building by the time specified and to hold him harmless from pecuniary loss on account of unpaid demands for labor and materials for which liens might be enforced against the property. The allegation of facts which show a breach of these covenants in effect, we think, was the allegation of a

breach of the bond under the rules of construction applicable to a petition, the sufficiency of which is not attacked by demurrer.   In such cases, the pleading should be construed most liberally in favor of the pleader and, if a given fact constitutive of the cause may be deduced by fair and reasonable intendment from the facts stated, the pleading should not be condemned as bad.    We regard the petition as containing a defective statement of the cause but as not failing entirely to state a cause and, under the rules announced, it should be pronounced sufficient to support the verdict and judgment.

The next point made by defendants is that the verdict "is not responsive to the issues, because it does not make any finding on the counterclaim of the defendant Mode and for that reason, the motion in arrest of judgment should have been sustained."    In the counterclaim pleaded by defendant Mode, he sought to recover the remainder of the contract price, amounting to $2,350 alleged to be due and unpaid; damages in the sum of $1,000 on account of delays alleged to have been caused by wrongful conduct of plaintiff and $270 on account of extra work done at the request of plaintiff.    There is evidence introduced by defendant which tends to show that he was entitled to be paid for the extra work, and some evidence was offered to support the claim of damages on account of delays occasioned by plaintiff. As to the remainder due on the contract price, the evidence shows beyond question that the amount paid out by plaintiff on account of mechanics' lien judgments exceeded the amount due the contractor on the contract price by $719.54.    Further, plaintiff adduced evidence to the effect that he had been damaged in the sum of $650 on account of loss in rental value of the building for the period between October 1, 1904, the date it should have been completed and the date of its actual completion.    The court in instructing the jury rejected plaintiff's claim for liquidated damages, treating the provis-

ion in the contract on which the claim was founded as one for the imposition of a penalty.    The instructions given were as follows:

On behalf of plaintiff:    "The court instructs the jury that if you believe from the evidence that the defendant, Mode, in the construction of said building, mentioned in the petition, failed to provide at his own costs and pay for any materials used therein as set forth in the petition, and that judgments for the amounts of such materials were rendered and declared liens by the Boone County Circuit Court against said building, and that the plaintiff had been compelled to pay such judgments, and the court cost incident thereto, over and above the contract price of said building, then your verdict should be against the defendant Mode, for the amount of all such judgments and costs so paid over and above contract price.

"The court instructs the jury that if under the evidence and instruction you should find for the defendant Mode, on any of the items of his counterclaim, and should further find for the plaintiff in a greater amount, then your verdict should be for the plaintiff for the excess of your finding, for the plaintiff over your finding for said defendant."

At the instance of defendant:    "The court instructs the jury that the provision in the building contract providing for a forfeiture of $20 per day for delay in the completion of the building after the 1st of October, 1904, is a mere penalty which the law will not enforce, and the plaintiff cannot recover the same, but can only recover on account of delay in completing the work, if any, which would have been the reasonable value of the rents of the building if it had been completed in the time required by the contract.

"The court instructs the jury that if they believe from the evidence that the completion of the building

was delayed by the failure of the plaintiff to turn over the lot for the erection of such building, or by the failure of plaintiff to construct a sewer to the corner of such building, or by changes in the construction of such buildings caused by errors in the plans therefor, or by the direction of the plaintiff to suspend other work thereon until the completion of the roof, then the plaintiff is not entitled to recover anything on account of the delays so occasioned, if any.

"If the jury believe from the evidence that the defendant performed extra work and furnished extra materials in the construction of the building in controversy at the request of defendant, in the following particulars:

Changing stairway from platform to window,
. Rebuilding stair from second to third floor,
Replastering walls,
Taking out walls at head of stairs,
Replacing walls,
Extending walls at foot of stairs,
Change in room on second floor,
then he is entitled to recover the reasonable value of such work and materials on his counterclaim not to exceed $270 or to have the amount you so find credited in any amount you may find in favor of plaintiff if the amount you find for plaintiff exceeds or equals the amount you find for defendant in his counterclaim."

Under these facts and thus instructed, the jury found for plaintiff in the sum of $1,000, but failed to mention the counterclaim in their verdict.

A counterclaim is a new and independent cause injected into the action by a defendant and under the well settled rule that the verdict must respond to the issues presented by the pleadings, a verdict which fails to dispose of the counterclaim when properly attacked should be set aside as not responsive to the issues. [Winkelman v. Maddox, 119 Mo. App. l. c. 661; Mar-

shall v. Armstrong, 105 Mo. App. 234; Henderson v. Davis, 74 Mo. App. 1.] But the rule is not to be construed as requiring the verdict in all cases to contain mention of the counterclaim. The statute does not say that such specific finding must appear therein (section 726, Revised Statutes 1899), and where from the whole record the conclusion is irresistible that the jury did consider and determine the issues raised by the counterclaim, and rendered a verdict for plaintiff which included a determination of these issues, the verdict should be regarded as responsive though it be silent as to the counterclaim. [Saddlery Co. v. Bullock, 86 Mo. App. 89; Cordage Co. v. Yeargain, 87 Mo. App. 561; Hackworth v. Zeitinger, 48 Mo. App. 32; Taylor v. Short, 38 Mo. App. 21; Jones v. Railroad, 89 Mo. App. 653.]

It is manifest from the record before us that in returning a verdict for plaintiff, the jury necessarily made a finding on the counterclaim. They were instructed that in case they found for plaintiff on his cause of action and for defendant Mode on his counterclaim, but for plaintiff in the greater amount, to deduct the lessor from the larger sum and to return a verdict for the difference. Evidently in obedience to this instruction, the jury did allow something to defendant, since the verdict rendered is less by over $300 than the amount of plaintiff's demand supported by his evidence. But whether or not the jury allowed anything to defendant, it is clear from all the facts we have stated they did determine all of the issues before them and the verdict rendered expressed the net result of their solution of the entire controversy. In order to preserve technical accuracy, it would have been better had the court instructed the jury to find separately on the cause of action and the counterclaim. But, convinced as we are that all of the issues were decided, it would be unjust and opposed to the letter as well as the

spirit of the law should we remand the cause for another trial on a technicality so barren.

Further, it is contended that "the court should have sustained the demurrer of the defendant surety company at the close of the whole case because it was discharged by the changes made in the stairway without its consent, and which were not specified in writing as required by the terms of the building contract." It appears from the evidence that a stairway from the first to the second floors was located by the plans at a place where an overhead cross beam would interfere with its proper use. The error was discovered by the contractor before any work was done and the architect was told about it. All that was necessary to do was to move the stairway back several feet to a place where persons might use it without striking their heads against the beam and where it would connect properly with the stairway leading to the third floor. The architect orally told the contractor to disregard the error in the plans and the latter, when he came to build the stairway, placed it far enough back for persons to clear the beam but failed to connect it properly with the other stairway. To remedy this defect, he was directed by the architect to tear out and rebuild the stairway. The building contract provided "that said party of the second part covenants and agrees to and with the said party of the first part to make and erect, build and finish a certain three-story basement brick office and business building, . . . in accordance with the drawings, plans and elevations and specifications furnished by the superintending architect. . . . The party of the first part shall be at liberty to make any deviation from or alteration in the plan, form, construction, detail and execution, described by the drawings and specifications, without invalidating or rendering void this contract, but no such alteration or deviation

shall be made without a written order for the same by the architect."

One of the rules of the law of suretyship is that the surety on a bond given to secure the performance of a builders' contract will be released from his obligation by any substantial alteration of the contract between the owner and contractor, except where such alteration be expressly authorized. If the contract stipulates for changes or alterations to be made in a particular manner, they may be made only in that manner and in no other, without releasing the surety. But "the rules for construing the contract of a surety or a guarantor, should by no means be confounded with the rule that sureties and guarantors are favorites of the law, and have a right to stand upon the strict terms of their obligations. . . . In the construction of the contract of a surety or guarantor, as well as of every other contract, the true question is: "What was the intention of the parties, as disclosed by the instrument read in the light of the surrounding circumstances? . . . The meaning of the words is not affected by the fact that the party sought to be charged is principal, surety or guarantor." [Beers v. Wolf, 116 Mo. 1. c. 184.] Did the contract, reasonably construed, contemplate that a mere error in the drawings could not be remedied without invalidating the bond, except by the request of the owner and on the written order of the architect? If the question must be answered in the affirmative, the defendant surety must be discharged from liability as it is conceded that this method was not followed in either particular, but we are of opinion that a negative answer should be given.

Turning to the specifications which, by express reference, were made a part of the contract, we find the parties further agreed "that the drawings, interlineations and figures are considered a part of and illustrating these specifications. The drawings must be care-

fully followed according to the figured dimensions, where no dimensions are figured the drawings must be followed according to their scale. Should any drawings or figures have been omitted which are necessary to a clear and perfect understanding of the work or *should any error appear in either,* it will be the duty of the contractor to notify the architect of such omissions or errors, and in no case to go on with the work in uncertainty, and should any mistake arise in consequence of such neglect on the part of the contractor, he must correct them at his own expense, when so directed by the architect. Whenever the words "as may be directed" or other expressions of similar meaning or intent are used, implying exercise of judgment or discretion, it is hereby understood that the architect is referred to or some person duly authorized to represent him in his absence." This provision, when read in connection with that before quoted, clearly discloses the real intent and purpose of the contracting parties. In case the owner desired any change to be made in the plan or construction of the building, such desire might be gratified without affecting the bond, provided he caused the architect to issue to the contractor a written order for the change. But in case changes had to be made, either in the drawings or specifications because of some technical error or omission of the architect, such error might be corrected without a written order from the architect and on his mere oral direction. To the latter class of cases belongs the instance under consideration. No substantial change was made in the stairway. Its construction and position were those contemplated at the time the drawings were prepared and, in order to correct an obvious mistake in them, it was not required that the architect should do more than orally to direct the contractor to correct the error.

Other points made by defendants are not sufficiently close to call for extended notice. The mechan-

ics' lien judgments were admissible in evidence even against the defendant surety company. [Oberbeck v. Mayer, 59 Mo. App. 289; McFall v. Dempsey, 43 Mo. App. 369; LaFayette Bldg. Assn. v. Kleinhoffer, 40 Mo. App. 388; Casey v. Gunn, 29 Mo. App. 14; Leavel v. Porter, 52 Mo. App. 632.] The allegations of the petition were broad enough to admit of proof of loss of rental value on account of the breach of defendants, and no error was committed in permitting the amendment of the petition after verdict to make it conform more accurately to the proof and instructions.

A careful inspection of the record convinces us that the case was tried properly and accordingly the judgment is affirmed. All concur.