## HANN v. VENETIAN BLIND CORPORATION et al.

### No. 880.

District Court, S. D. California, Central Division.

June 13, 1936.

1,829,718 were granted to him for the invention. Anderson, by an assignment in writing, sold and assigned to Francis Hann, the plaintiff, all his right, title, and interest in the letters patent. By his bill of complaint in equity, Francis Hann, after making general allegations relating to the value, commercial utility, wide use of the patented article and of its manufacture and sale by him under the letters patent, charges the defendants with infringement by the manufacture, without the plaintiff's license and consent, of devices embodying the inventions disclosed by the letters patent. The bill also alleges notification of the defendants of the exclusive right of the plaintiff to the patent, gains and profits realized by the defendant from the sale of the infringed article, and seeks injunctive relief and an accounting. The defendants have pleaded the general issue and certain special defenses, to be noted more fully further on in the discussion. As a part of their answer, they have filed what they denominate a "counterclaim and petition for declaratory relief," which seeks a declaration of the invalidity of plaintiff's patent, and which we shall call "the counterclaim." The plaintiff has moved to dismiss the counterclaim upon the ground that it does not state a cause of action for declaratory relief.

The question presented by the motion is: May the defendants in an equity suit for infringement assert a counterclaim of this character and assert the existence of a controversy which would entitle them to a declaration of invalidity under the Declaratory Judgment Act (28 U.S.C.A. § 400). Their counsel, with perfect candor, state that the object of the inclusion of the counterclaim is to prevent a dismissal of the suit by the plaintiff without an adjudication of the validity of the patent. It is conceded that, in the absence of cross-demands in a suit for infringement, the plaintiff has the right to dismiss it. See New York Life Insurance Company v. Driggs (C.C.A.4, 1934) 72 F.(2d) 833; Pullman's Palace-Car Company v. Central Transportation Company (1898) 171 U.S. 138, 18 S.Ct. 808, 43 L.Ed. 108; Jones v. Securities and Exchange Commission[1] (1936) 56 S.Ct. 654, 80 L.Ed. ——. By filing a counterclaim, the defendant gains the right to have the cause of action set up in it heard, even though the plaintiff does not proceed to

Lyon & Lyon and Lewis E. Lyon, all of Los Angeles, Cal., for plaintiff.

J. Calvin Brown, of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

On July 26, 1930, Edwin Anderson filed his application in the United States Patent Office for letters patent for what is claimed to be a new and useful invention known as "Venetian Blind Bracket." On October 27, 1931, letters patent No.

[1] 298 U.S. 1.

a hearing upon the bill or the bill is actually dismissed. See Howard v. Leete (C.C.A.6, 1919) 257 F. 918; Vidal v. South American Securities Co. (C.C.A.2, 1921) 276 F. 855; Moore v. New York Cotton Exchange (C.C.A.2, 1923) 296 F. 61. Writers on patent law have pointed to this as the great advantage that might flow from seeking declaratory judgments of invalidity by way of counterclaim. See Journal of the Patent Office Society, 1935, vol. 7, No. 3, p. 244; Journal of the Patent Office Society, 1935, vol. 17, No. 8, p. 674. But neither this advantage nor the fact, to which these articles and counsel have called attention, that certain District Judges, including some in our own district, have allowed such counterclaims, is decisive of the matter. In last analysis, the matter must be determined with reference to the requirements of Equity Rule 30, 28 U.S.C.A. following section 723. The Declaratory Judgments Act is remedial in nature. Its aim is to introduce into federal procedure the benefit of the English rule (Order 54A of the Supreme Court), which, in its present form, dates back to 1883. Its aim is to allow declaration of rights whether any other relief was asked or not, in imitation of the equitable principles which lay at the foundation of the bills quia timet. They were ordinarily applied to prevent wrongs or anticipated mischief and not merely to redress them when done. By them, a party sought the aid of a court of equity because he feared some future probable injury to his rights or interests and not because an injury had already occurred which required any compensation or other relief. Yankwich, Pleading and Procedure (1926) §§ 211-216; Ball, The Annual Practice (1936) pp. 187-189. Given, therefore, an actual controversy, the aim of the Declaratory Judgments Act is to allow courts to take jurisdiction of it in order to grant declaratory relief either before or after "the stage of relief by coercion has been reached." See Gully v. Interstate Natural Gas Company (C.C.A.5, 1936) 82 F.(2d) 145, 149. As somebody once put it, through declaratory judgment the law is turned from a repair shop into a service station. None the less, the Declaratory Judgments Act does not change the character of the judicial power of the federal courts or the essential requisites for its exercise. See United States v. West Virginia (1935) 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546; Ashwander v. Tennessee Valley Authority (1936)[1] 56 S.Ct. 466, 80 L.Ed. 688; Southern Pacific Company v. McAdoo (C.C.A.9, 1936) 82 F.(2d) 121. The tendency of courts has been to interpret the power granted by the act "to declare rights and other legal relations" broadly. See Nashville, C. & St. L. R. Co. v. Wallace (1933) 288 U.S. 249, 261-264, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Ashwander v. Tennessee Valley Authority, supra; 1 C.J.S., Actions, #18, pp. 1018-1058.

The jurisdiction of District Courts over suits or cases at law or in equity arising under the patent laws of the United States is both original and exclusive. 28 U.S.C.A. § 41; 28 U.S.C.A. § 371. And a cause of action arises under the patent laws when the plaintiff sets up some right, title, or interest under the patent laws. See Pratt v. Paris Gaslight Co. (1897) 168 U.S. 255, 259, 18 S.Ct. 62, 42 L.Ed. 458; Odell v. F. C. Farnsworth Co. (1919) 250 U.S. 501, 39 S.Ct. 516, 63 L.Ed. 1111; Dickinson Tire & Machine Co. v. Dickinson et al. (C.C.A.2, 1928) 29 F.(2d) 493. Certain it is that a person who claims the monopoly of a patent and another person who asserts the right to the use of the patented article by reason of its invalidity for lack of invention, or for any other reason, and who is threatened by the patentee, his assignee or grantee, with suit for infringement, have an actual controversy involving valuable "rights" and "legal relations" which are a proper subject for declarations by Federal courts, for "some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." Pratt v. Paris Gaslight Co., supra, 168 U.S. 255, at page 259, 18 S.Ct. 62, 64, 42 L.Ed. 458. And the trend is to entertain declaratory judgments relating to patents declaring their validity or invalidity, whether there has been infringement or not. Borchard, Declaratory Judgments (1934) pp. 17-19, 68; Zenie Bros. v. Miskend (D.C.N.Y.1935) 10 F.Supp. 779; Automotive Equipment, Inc., v. Trico Products Corporation (D.C.N.Y.1935) 11 F.Supp. 292, both cited with approval by our own Circuit Court of Appeals in Southern Pacific Co. v. McAdoo, supra; Mitchell & Webber v. Williamsbridge Mills (D.C.N.Y.1936) 14 F.Supp. 954.

A writer in a recent issue of the Yale Law Journal, commenting upon this trend, justifies this assumption of jurisdiction by the District Courts under the Declaratory

[1] 297 U.S. 288.

Judgments Act. He writes: "But it can be contended that a case 'arising under' the federal laws is presented even though the plaintiff does not claim for himself a right conferred by one of those laws if, as in the present case, an essential ingredient of the plaintiff's original cause of action is the non-existence of such a right in the defendant; if, that is, the plaintiff's complaint, properly stated without the aid of anticipated defenses, makes inevitable an adjudication as to the existence of that right. On several occasions, the Supreme Court has laid down a sufficiently broad definition of the statutory grant of jurisdiction to warrant this conclusion. And it finds particularly strong support in the cases involving a bill to quiet title to real property, where the defendant claims title by virtue of a federal grant or statute. There the allegation that the defendant is asserting his claim and that the claim is invalid is called an essential element of the plaintiff's cause of action, and such an allegation is apparently sufficient to invoke federal jurisdiction. Although these cases cannot be regarded as conclusive, because the plaintiff, as well as the defendant, typically bases his claim to the property on a federal grant or statute, they are of considerable force, since a claim of title under federal statute by the plaintiff does not alone justify the exercise of federal jurisdiction. If this broader statement of the rule is correct, the plaintiff in the principal case presented a proper case for the exercise of federal jurisdiction by alleging that the defendant's patents were invalid, even though his interest in obtaining this declaration was not conferred by the patent law. For although prior to the Declaratory Act no separate cause of action existed in which the invalidity of the defendant's patent was an essential ingredient of the plaintiff's cause rather than an anticipated defense, the Act enables the plaintiff to state an original cause of action which is directly based on the invalidity of the defendant's patent, since it permits a proceeding to determine 'legal relations', thereby, it is said, allowing the plaintiff to state a justiciable case by alleging that the defendant has a no-right." "Federal Jurisdiction over Declaratory Judgment Proceedings in Patent Cases" in 45 Yale Law Journal (1936) pp. 1287, 1288, 1289.

 Borchard also expresses approval of these cases and justifies their reasoning. See Borchard, "Recent Developments in Declaratory Relief" (1936) 10 Temple Law Quarterly, pp. 233, 246–248. Granting, therefore, that, under a broad view of the scope of the Declaratory Judgments Act, the District Courts may entertain actions to declare rights under a patent or to declare its invalidity, the question still remains whether in a pending suit for infringement, instituted by the assignee of a patent, the defendant may, by way of counterclaim, ask for a declaration of invalidity and nothing else. Under Equity Rule 30, 28 U.S.C.A. following section 723, two kinds of equitable counterclaims are allowed. The first is one arising out of the transaction which is the subject matter of the suit. This counterclaim must be set up in the answer or it is waived. The other is one not arising out of the same transaction, but which might be the subject of an independent suit in equity against the plaintiff. See American Mills Co. v. American Surety Co. (1922) 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306; Moore v. New York Cotton Exchange (1926) 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. A counterclaim is a cause of action in favor of a defendant upon which he might have sued the plaintiff and obtained affirmative relief in a separate action—whether it arises out of the contract or transaction on which plaintiff's claim is bottomed or not. See 57 Cor.Jur. 366; French Republic v. Inland Navigation Co. (D.C.Mo.1920) 263 F. 410, 412. Under Equity Rule 30 counterclaims for infringement of letters patent by the plaintiff, for unfair competition, and for other wrongs claimed by the alleged infringers to have been suffered through the patentee have been sustained. A few cases are here referred to without any attempt to group them in any manner other than chronologically and to indicate, in a general way, the nature of the counterclaim. United States v. Sprague (D.C.1913) 208 F. 419 (counterclaim for damages because of circulation by the plaintiff of false statements regarding the defendant's business); United States Expansion Bolt Co. v. Kroncke Hardware Co. (D.C.Wis.1914) 216 F. 186 (counterclaim alleging infringement of patent by the plaintiff and unfair competition); Cleveland Engineering Company v. Galion Dynamic Motor Truck Co. (D. C.Ohio 1917) 243 F. 405 (claim of equitable ownership of the patent in the defendant, with prayer for decree quieting

title); Naivette v. Philad Co. (C.C.A.6, 1931) 54 F.(2d) 624 (prayer for decree quieting title); Marvel Rare Metals Co. v. General Electric Co. (C.C.A.6, 1932) 56 F.(2d) 823 (counterclaim alleging infringement of patent owned by one of the defendants); Leman v. Krentler-Arnold Hinge Last Co. (1932) 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (counterclaim seeking injunction against infringement of like patent of defendant); General Electric Co. v. Marvel Rare Metals (1932) 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (counterclaim alleging infringement of patent owned by one of the defendants). These cases illustrate the variety of circumstances under which counterclaims have been allowed in patent suits. In all instances, the counterclaim has been of such a nature as to affect, diminish, or defeat the plaintiff's cause of action, or to lessen, modify, or interfere with the relief he asks. Any counterclaim must do this. Otherwise it is not a true counterclaim. Defensive matter, whether it be of the type available under the general issue or of the type known as new matter (or special defenses), is essentially negative in character. It attacks the plaintiff's right of action. It need not assert the existence of any right of action in the defendant. If sustained, the plaintiff takes nothing by the suit; the defendant being merely freed of liability. And his recovery is limited to his costs. A counterclaim, on the other hand, need not attack the plaintiff's right of action. It may even admit it. But it does set up a demand upon the part of the defendant, the effect of which is always to affect or diminish, or to overcome or defeat entirely the relief sought by the plaintiff. This assertion of a right of action in the defendant is of the very essence of a counterclaim. By it, the defendant becomes an actor in the suit. And thus each party is at once a plaintiff and defendant. See Yankwich, California Pleading and Procedure (1926) §§ 77, 78, 80; Pomeroy, Remedies and Remedial Rights (2d Ed.) 1883, § 745; Bliss, Code Pleading (1879) §§ 339-341; Phillips, Code Pleading (1896) §§ 249-252; Clark, Code Pleading (1928) pp. 441-450; General Electric Co. v. Williams (1898) 123 N.C. 51, 31 S.E. 288; Walker v. American Central Insurance Co. (1894) 143 N.Y. 167, 38 N.E. 106; Hayward v. Black (1920) 46 Cal.App. 504, 189 P. 460; Bandy v. Westover (1927) 200 Cal. 222, 252 P. 593.

As said in French Republic v. Inland Navigation Co., supra: "A counterclaim is a cause of action in favor of defendant and against the plaintiff, arising out of the transaction or contract pleaded by plaintiff, and on which plaintiff's claim is bottomed. Section 1807, R.S.Mo.1909 [Mo. St.Ann. § 777, p. 1022]; Gamewell, etc., Co. v. Fire, etc., Co., 116 Ky. 759, 76 S.W. 862. It is so far an independent action as that it must be pleaded with like sufficiency as the law requires, if a new and independent action were brought by the defendant against the plaintiff. Com. v. Barker, 126 Ky. 200, 103 S.W. 303; Emmerson's Adm'r v. Herriford, 71 Ky.(8 Bush) 229; Ross v. Ross, 60 Ky.(3 Metc.) 274. The verdict of the jury must be responsive to the issues made by the counterclaim (Nowell v. Mode, 132 Mo.App. 232, 111 S.W. 641; Winkelman v. Maddox, 119 Mo.App. [658] loc. cit. 661, 95 S.W. 308; Marshall v. Armstrong, 105 Mo.App. 234, 79 S.W. 1161), and after the filing of a counterclaim by a defendant a plaintiff cannot dismiss, or take a voluntary nonsuit in the action, without the defendant's consent thereto." French Republic v. Inland Nav. Co. (D.C.) 263 F. 410, at pages 412-413.

It seems evident to us, therefore, that a counterclaim in a patent suit must conform to the essential requirements of a counterclaim in any other suit; namely, that it set forth what might otherwise be the subject of an independent cause of action existing in favor of the plaintiff and against the defendant. A counterclaim which merely sets forth matters seeking to defeat the plaintiff's claim which are put in issue by the plaintiff's own bill or by the affirmative defenses is not a counterclaim at all. It is merely an attempt to restate affirmatively defensive matter which is already available through the denial of the allegations of the plaintiff's bill and the affirmative defensive matter. It is therefore sham matter which any court is bound to strike from the answer. It is made a ground of a motion to strike by Equity Rule 33, 28 U.S.C.A. following section 723.

The Declaratory Judgments Act has not changed the meaning or nature of a counterclaim as that incidence of procedure is understood in pleading and as it is embodied in Equity Rule 30, 28 U.S.C.A. following section 723. From what precedes, it is evident that, as "coun-

terclaim" is generally understood, and as it is applied in patent and other cases, it must seek some affirmative relief, arising out of the same or another transaction, which might be the subject of an independent suit. It must assert a demand against the plaintiff or seek affirmative relief against him which would not be available to the defendant under a purely defensive pleading. In a suit for the infringement of a patent, the counterclaim must assert matters which are not otherwise available as a defense under the general issue and the affirmative defenses. To hold that the Declaratory Judgments Act justifies a departure from these principles would be, in effect, to hold that it amended Equity Rule 30 by allowing a counterclaim under circumstances under which it would not have been allowed before. The Equity Rules have been promulgated by virtue of the authority vested in the Supreme Court by the Congress (28 U.S.C.A. §§ 723, 730). Unless inconsistent with the laws of the United States, they have the force of law in the realm of equity procedure in the federal courts. Bank of United States v. White (1834) 8 Pet. 262, 268, 8 L.Ed. 938; United States v. Barber Lumber Co. (C.C.Idaho, 1908) 169 F. 184; Taylor v. Ford Motor Co. (D.C.Ill.1924) 2 F.(2d) 473. As the authority of the Supreme Court granted by the Congress is exclusive and intended to grant them the power to cover the entire field, no presumption of an attempt, upon the part of the Congress, to effect an amendment of a rule of procedure, in the absence of direct evidence of intention to modify the exclusive rule making given by congressional mandate, will be implied. Neither the theory of the Declaratory Judgments Act nor its terms justifies the assumption that it had the effect of amending Equity Rule 30 by changing the nature of a counterclaim in equity. The scope of the act, as already indicated, is merely to allow the intervention of courts upon the happening of a controversy without waiting that harm requiring coercive action result from it. It does not change the incidences of procedure laid down in the equity rules. Nor does it change the nature of the equitable counterclaim as we have come to know it under Equity Rule 30 and in code procedure for over eighty years.

Zenie Bros. v. Miskend (D.C.N.Y.1935) 10 F.Supp. 779, does not sanction such procedure as is attempted here. That case merely holds that an action in declaratory relief, seeking to declare a patent invalid, may be entertained by the District Court, and the mere fact that the defense of invalidity would be available in a suit for infringement does not call for a denial of such relief. One can find no fault with the reasoning of the learned District Judge who wrote that opinion. There was no action for infringement pending. And, the very object of declaratory relief being to entertain actions as soon as an actual controversy arises, it should not be necessary that a person who is being accused of infringement wait until the accuser has brought him to court before acting. The aim of the Declaratory Judgments Act is to allow a person, the moment the controversy arises, to go into court, before greater harm result, and ask for an adjudication of his rights. But neither directly nor inferentially does that decision sanction a counterclaim under the Declaratory Judgments Act in a pending suit for infringement —seeking to achieve nothing more than to declare the patent invalid. And that is all that the defendants seek here by their counterclaim. The bill filed by the plaintiff in equity charges infringement of the patent owned by him, seeks injunctive relief and an accounting. The defendants (under 35 U.S.C.A. § 69) have pleaded the general issue. Affirmatively, on information and belief, they have also pleaded the invalidity of the patent sued on, and that the alleged invention has been patented or described in a printed publication prior to the supposed invention of Edwin Anderson or more than two years prior to the 26th day of July, 1930, the date of his application for patent. Also on information and belief, the defendants have set forth another separate defense stating that Anderson was not the original and first inventor of any material or substantial part of the invention patented and that it involved no more than mechanical skill. In effect, therefore, the plaintiffs, in addition to denying the validity of the letters patent and denying infringement, have pleaded affirmatively invalidity by reason of lack of invention and of originality, as well as priority. The counterclaim pleads invalidity, notification of some of the customers of the defendant, and limitation of claims. It admittedly presents no issue which is not available under the general and spe-

cial defenses pleaded. See Automotive Equipment, Inc., v. Trico Products Corporation (D.C.N.Y.1935) 11 F.Supp. 292. It is therefore not a true or proper counterclaim. To entertain it under these circumstances, in order to give the defendants control over the plaintiff's suit, which would enable them to resist any attempt upon the part of the plaintiff to dismiss it and to compel its trial, would, in the absence of direct provisions to the contrary in the equity rules or commanding general equity principles sanctioning such procedure, amount to a denial of due process. See Jones v. Securities and Exchange Commission, supra. A litigant may choose the conditions under which he may discontinue litigation begun by him. This right is substantial. Ex parte Skinner & Eddy Corporation (1924) 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912. And it is absolute.

As said in Ex parte Skinner & Eddy Corporation, supra, 265 U.S. 86, at pages 93, 94, 44 S.Ct. 446, 448, 68 L.Ed. 912:

"The right to dismiss, if it exists, is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right.

"The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree." The foregoing statement is quoted with approval in Jones v. Securities and Exchange Commission, supra.

A litigant's adversary may defeat this right by seeking affirmative relief against him. To give to a litigant's adversary that right without such condition is to deprive the litigant of this substantial and absolute right unjustly. In a court of equity such procedure would do violence to the general spirit of equity. Nay, it would do violence also to that idea of distributive justice which Ulpian has defined as: "Constans et perpetua voluntas suum cuique tribuendi."

To allow the defendants to maintain a counterclaim, the sole object of which is to keep the plaintiff in court at the defendant's will, is to give to the defendant more than his due. The motion to strike the counterclaim will therefore be granted.